CASE 5—PETITION EQUITY—JUNE 15.

## Howell v. Ackerman, &c.

APPEAL FROM KENTON CHANCERY COURT.

1. CONSTRUCTION OF DEVISE—WORD "HEIRS" CONSTRUED.—The word "heirs" has both a technical and a popular meaning, and when used in a will, that construction must be given to it which will carry out the testator's intention.

A testator devised all his real estate to his wife, one-half of said property to go, after her death, to her "lawful heirs," and the other half to the testator's "lawful heirs." Prior to his death, the testator leased to another a lot for twenty years, giving the lessee the privilege of purchasing at any time within the first ten years at a named price; and the lessee having, since the testator's death, elected to purchase, he brings the purchase money into court and offers to comply with his contract. The widow, having elected to take the present cash value of her life estate in the proceeds, and

the heirs of the testator consenting to take one-half of the balance of the proceeds, the next of kin of the widow claim the other half as her " lawful heirs." *Held*—That when the widow elected to take absolutely the value of her life estate in money, thus divesting herself of all interest in or control over the balance of the proceeds of the estate, it was equivalent to her death, and under the will the right to the fund then vested in her apparent heirs.

2. SAME.—The widow is not entitled to all the proceeds absolutely under a devise to her of all the testator's personal estate.   This is not analogous to a case where real estate is directed by a will to be converted into money, and is thenceforth treated in equity as personalty.

3. SAME.—Under our statute a will, as to real estate embraced in it, is to be construed as speaking and taking effect as if executed immediately before the death of the testator, unless a contrary intention is expressed.

O'HARA & BRYAN FOR APPELLANT.

The testator did not intend that the estate devised to his wife for life should be divided until her death.   Until then, it cannot be ascertained who will fill the description of " her lawful heirs."   The right of any heir apparent is contingent upon his surviving the life-tenant. (Feltman v. Butts, 8 Bush, 115; Williamson, &c., v. Williamson, &c., 18 B. M., 365; Mercantile Bank of New York v. Ballard's Assignee, 83 Ky., 481; Chitty's Blackstone, vol. 2, 169; Johnson, &c., v. Jacob, 11 Bush, 646.)

Therefore, the chancellor erred in not decreeing that the proceeds of the property be invested, and that the income therefrom be paid, during her life, to the life-tenant, and at her death one-half the principal be paid to the *then* lawful heirs of the testator, and the other half to the *then* lawful heirs of the widow.

ORLANDO P. SCHMIDT FOR APPELLEES.

1. The testator's heirs are to be ascertained as of the time of his death, and not as of the time of the life-tenant's death.   (Stokes v. Van Wyck, The Reporter, vol. 24, p. 667.)

2. The testator used the term, "the lawful heirs of my wife," to denote a class of persons who might come under this denomination at the time of his death; and when the widow consented to take the cash value of her life estate in the fund in controversy, the remaindermen, as to it, occupied exactly the same position as if her life estate therein had terminated by death.   (Feltman, &c. v. Butts, &c., 8 Bush, 120; Turman v. White's Heirs, 14 B. M., 450; Schouler on Wills, sec. 529.)

3. There is no principle of law which will allow this fund to be treated

as personalty. A will must be construed with reference to the real and personal estate comprised in it to speak and take effect as if it had been executed immediately before the death of the testator unless a contrary intention shall appear by the will. (Gen. Stats., chap. 113, sec. 16.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

March 1, 1877, Conrad Ackerman leased a lot of land to Howell & Clendening for twenty years, with the privilege of purchasing the same at any time within the first ten years of the lease, at the price of fifteen thousand dollars. He died testate in December, 1878. The appellant, Howell, acquired all the rights of Clendening, under the lease; and on February 28, 1887, availed himself of the privilege of purchase by bringing this action, asking a construction of the lease and the decedent's will, and a conveyance by a proper deed. He, at the same time, paid into court the cash payment, and offered to comply, upon his part, with all the conditions of the contract. As to this, there is no question.

The will of the testator provides: "I give and devise unto my beloved wife, Magdalena, all my real property whatsoever, to have and to hold the same, with all the appurtenances thereunto appertaining, to her, the said Magdalena Ackerman, to her sole and separate use, free from the interference or control of any future husband she may have, for the term of her natural life; and after the death of my wife, then one-half of said property to go to my lawful heirs, and the other half of said property to the lawful heirs of my said wife.

"I also give and bequeath unto my beloved wife, Magdalena Ackerman, all my personal property of

whatever description after payment of all my just debts.''

The widow, by answer, claimed a life estate in the leased property, or its proceeds, and elected to take the present cash value thereof. It was allowed to her. The testator's only heir, his brother, J. F. Ackerman, by answer, consented to take one-half of the proceeds, after paying the widow the present cash value of her life estate. All the next of kin of the widow, by answer, gave a like consent. They claim to fall within the description, "lawful heirs of my said wife," as used in the will; and that, after the payment of the present cash value of the widow's life estate, they are entitled in remainder to the other half of the proceeds. The widow, in her answer and cross-petition, set forth the names of her next of kin, they being collaterals; it is also proven, and there is no dispute upon this point.

The lower court gave to J. F. Ackerman, as the lawful heir of Conrad Ackerman, one-half of the remainder proceeds; but held that the expression in the will, "lawful heirs of my said wife," meant her technical heirs, or those who would be her heirs at her death. Upon the ground, therefore, that those may be her heirs, who are not now *in esse*, it directed the remaining one-half to be loaned out under its control, until the death of the widow.

The appellant, Howell, now claims that the court should retain the control of the entire fund, save the value of the widow's life estate, upon the ground that there was, under the will, to be no division or distribution of the property until the life-tenant's death, and

that it was then to pass the one-half to whoever might then be the testator's heirs, and the other half to whoever might then be the wife's heirs. In other words, that the estate, as to both the testator and his wife, did not, under the will, vest, by way of remainder, in any one, until the death of the life-tenant, and then the one-half in whoever might then be the husband's heirs, and the other half in whoever might then be the wife's heirs. The next of kin of the wife contend that they are entitled absolutely to the fund retained by the court.

It is suggested whether, as the will gives to the wife absolutely all the testator's personal estate, and, as the option of purchase was given in his life-time, she is not entitled absolutely to all the proceeds. It is not analogous, however, to the case of a direction in a will, that real estate shall be converted into money, and which in equity is thenceforth treated as personalty.

Under our statute a will, as to the real estate comprised in it, is to be construed as speaking and taking effect as if executed immediately before the death of the testator, unless a contrary intention is therein expressed. (General Statutes, chapter 113, section 16.)

Here the testator, at his death, held the fee. Merely an option to purchase existed. The lessee was not bound to avail himself of it. It was entirely optional with him. He might never do so. It was actually purchased eight or nine years after his death. The widow is not asserting any such claim; and if she were, it could not be maintained.

If the construction given to the will below be correct, it is, perhaps, difficult to tell who now holds the title to

Howell v. Ackerman, &c.

the fund which the court has retained. If not in the heir-at-law of the testator, subject to pass to whoever may be the heirs technically of the life-tenant at her death, then it is *in nubibus*.

Courts favor vested, and not contingent interests. If it be doubtful whether the language employed creates the one or the other, the law declares in favor of the former. It is, however, a question of intention upon the part of the testator. Manifestly, the words "lawful heirs" were not used by the testator as meaning children. Neither he or his wife had been blessed with issue. It is manifest he had no expectation of it, as, in that event, he would not have distinguished between his and his wife's next of kin. Knowing there would be no child to take the remainder, he evidently intended to divide it equally between his and his wife's next of kin. The term "lawful heirs" was used to denote those persons. He made provision for his wife, and he expected and intended, whenever her interest in the property ended, that it should pass equally to his and her next of kin. When she elected to take absolutely the value of her life estate in money, thus divesting herself of all interest in, or control over, the balance of the proceeds of the estate, it was equivalent to her death; and, under the will, the right to it then vested in her apparent heirs. The word "then" was intended, by the testator, to relate to the time when his wife's interest in the estate should cease; and the words "lawful heirs of my said wife" should not be regarded as having been used in their strict technical meaning, but in their popular sense as indicating her apparent heirs. This must be taken as the sense in

which the donor used them, because he evidently intended the wife's next of kin to take when her interest in the estate ended.

The signification of the word "heir" is, in all cases, a question of intention. It has a legal and a popular meaning; and that construction must be given to it which will carry out the testator's intention. The one meaning is technical, and embraces the entire line of heirs; the other is not technical, but common, and used to indicate those who may come under that denomination at a particular time. In this instance, the words "lawful heirs of my said wife" were used in their common acceptation in reference to a class, and to indicate her next of kin, whenever her interest in the estate should end.

To illustrate: Suppose the widow had waived the provisions of the will, as she had the right to do, thus ending her life-tenancy. In such a case, looking to the intention of the testator and the provisions of his will, would not the then next of kin, or apparent heirs of the wife, have been entitled?

Mr Redfield says: "Where the estate in remainder is dependent upon the life estate of the testator's widow, who waived the provisions of the will, and took her share under the statute, it was held that estates in remainder vested immediately upon the determination of the estate or interest of the widow." (2 Redfield on Wills, page 258.)

Here it is manifest the testator, by the use of the words "lawful heirs of my said wife," referred to those who would be her next of kin, whenever her interest in the estate should cease; and the judgment is, there-

fore, reversed, but only in so far as the court refused to adjudge the fund retained by it to Stout, Endlich, &c. A decree is directed to be entered, giving it to them absolutely; and cause is remanded for further proceedings in conformity to this opinion.