In the matter of the Estate of CHARLES OERTLE, deceased.

October 3, 1885.

Will—Construction—Life Estate in Real and Personal Property—Power of Sale—Charge on Life Estate.—A testator by his will devised and bequeathed all his real and personal property to his wife for life, and provided that at her death any and all of the property and estate so granted, "or any part of the same then left by her," should be divided among his children. The will also contained a provision, as follows: "I make this a condition that my said wife shall, out and from said property left her, provide for the maintenance and education of my children." A power to sell and convert the property is also given to the executors. *Held*, that upon his decease a life-estate in the realty vested in the wife and a remainder in fee in the children, and in like manner similar interests were created in the personalty, and in case of sales the

devisees or legatees would take similar interests in the proceeds.  *Held*,
also, that by the terms of the will an implied power of disposition is given
to the widow of so much of the capital fund or *corpus* of the estate as
may be reasonably necessary for her own support and the maintenance
and education of the children after first applying the income thereto;
that the provision for the widow is made in consideration that she shall
so provide for the children from the property left her, and that for such
purpose, as well as her own support, the income is the primary fund.

**Same—Life Interest in Personalty—Possession.**—The donee for life of
personal property is entitled to the possession thereof without executing
security for its safe-keeping, except in cases of real danger.  It is not
usual or proper in practice to exact anything more in the first instance
than the filing of an inventory in the proper court.

The last will of Charles Oertle was duly proved in the probate
court for Nicollet county.   The debts and expenses of administration
having been duly paid, the widow of the deceased (who had remar-
ried, and whose name had become Josephine Sauer) made applica-
tion to the probate court for an order "assigning to her the property
and money belonging to said estate and now remaining in the hands
of the said executors."   The provisions of the will on which this ap-
plication was based are stated in the opinion.

The probate court made an order that the widow "have and hold
interest for and during her natural life in all the estate, real and per-
sonal, of which her former husband, Charles Oertle, died seized, or to
which he was entitled at the time of his death;" and the court further
ordered that before the widow "take possession of said estate she ex-
ecute and file a bond in the sum of $5,000, with sureties to be ap-
proved by said court, conditioned for her faithful accounting to said
court for the preservance and safe-keeping of the principal of said
estate received by said executors and turned over to her, and for the
payment and turning over unimpaired all of said personal estate to
said minor children and legatees in remainder of said Charles Oertle,
upon the decease of said Josephine Sauer."   From this order the
widow appealed to the district court, upon questions of law only.   The
appeal was heard by *Webber*, J., who ordered judgment modifying and
changing the order of the probate court so as to provide that the

widow (Josephine Sauer) "file in the office of said probate court a bond in such sum as said judge of probate shall direct, with sufficient sureties, to be approved by him, conditioned for the maintenance and good education of the children mentioned in said will, (she having voluntarily consented to give such bond,) and that thereupon the executors named in said will, Otto Winterer and Louis Horst, deliver and turn over to said Josephine Sauer all the real and personal property of every name and description in their possession or under their control belonging to said Charles Oertle, deceased, for her exclusive use and benefit during the term of her natural life, and that they take her receipt therefor, particularly describing said property, and file the same in the office of said judge of probate; that said Josephine Sauer have power and authority to use, consume and expend such part and portion of said property as may be necessary for her exclusive use and benefit during the term of her natural life, and to provide for the maintenance and good education of said children; but that said executors have the sole and exclusive power to sell any of said property at any time during the life of said Josephine Sauer; and that in case of such sale, they deliver the proceeds thereof (less their reasonable charges for such sale) to said Josephine Sauer, and take her receipt therefor, and file the same in the office of said judge of probate; and that, upon the death of said Josephine Sauer, said executors take possession of all said property or any part of the same left by her or the proceeds thereof, and that the same be divided among said children equally, share and share alike." The executors appeal from the judgment of the district court.

*G. S. Ives*, for appellant.

The use of the expression "and which, or any part of the same then left by her" is of no vital significance and cannot be permitted to overreach a clearly-expressed intention that the widow should take a life-estate only. *Green* v. *Hewitt*, 97 Ill. 113; *Foote* v. *Sanders*, 72 Mo. 616; *Smith* v. *Bell*, 6 Pet. 68; *Brant* v. *Va. Coal Co.*, 93 U. S. 326; *Siegwald* v. *Siegwald*, 37 Ill. 430; *Riggins* v. *McClellan*, 28 Mo. 23. In the cases which sustain the doctrine that the words "whatever remains" and similar expressions authorize the person holding the prior estate to consume or dispose of some portion of the principal, there

will be found that a power of sale was given to the holder of such estate. 1 Perry on Trusts, §§ 250–252; *Burleigh* v. *Clough*, 52 N. H. 267; *Second, etc., Church* v. *Disbrow*, 52 Pa. St. 219.

*C. R. Davis* and *Sumner Ladd*, for respondent.

VANDERBURGH, J. The legal questions involved in this case arise upon the construction of the terms of the will of Charles Oertle, deceased, which, after provisions for the payment of debts, disposes of all the residue of his real and personal estate as follows: "I give, bequeath, and devise to my beloved wife Josephine all my real estate and personal property, without exception, of which I may be possessed at the time of my death, * * * to hold and possess during the term of her natural life for her own exclusive use and benefit. After the death of my said wife, any and all of the property and estate mentioned above, and which, or any part of the same then left by her, shall be divided among my children equally, share and share alike. As a special provision of this my last will and testament, I make this a condition that my said wife shall, out and from said property left her, provide for the maintenance and a good education of my children. And I hereby make, constitute, and appoint Otto Winterer and Louis Horst executors of this my last will and testament, with power to sell and dispose of all the property, both real and personal, at public or private sale, at such time or times, and upon such terms, and in such manner, as to them shall seem meet."

The probate court adjudged and determined that the surviving wife was entitled to a life-estate only in the property real and personal, and further ordered that, before taking possession thereof, she execute a bond, to be approved by the court, for the safe-keeping and faithful accounting by her of the property or capital fund received by her, to the end that the same might be turned over unimpaired to the children of the testator. Upon appeal, the judgment of the probate court was so far modified that it was ordered that the widow should "have power and authority to use, consume, and expend such part and portion of said property as may be necessary for her exclusive use and benefit during the term of her natural life, and to provide for the maintenance and good education of said children; but that said executors have the sole and exclusive power to sell any of said property at any

time during her life; and that in case of such sale they deliver the proceeds thereof to her, and take her receipt therefor, and file the same in the office of said judge of probate." In place of the bond required by the probate court, it was ordered, upon her consent, that the widow file a bond with sufficient sureties for the maintenance and education of the children, and that an inventory of the property, real and personal, turned over to her by the executors, receipted by her, be also filed with that court. It was further ordered that upon her death all of the property, or any part of the same left by her, or the proceeds thereof, be divided among the children, share and share alike.

The questions involved require a careful consideration of the several clauses of the will. A power of sale is vested in the executors, to be exercised in their sound discretion. They are, however, given no other authority or control over the property, and have no active trust to execute in or about the same. They have simply a naked power of sale, and the title passed subject to the exercise of such power. *Tobias* v. *Ketchum,* 32 N. Y. 319, 329. As respects the real property, a life-estate vested in the wife, and a remainder in fee in the children, subject to be defeated by a sale. Gen. St. 1878, c. 45, §§ 13, 33; *Ackerman* v. *Gorton,* 67 N. Y. 63. The same rule is applicable to the personalty; and interests for life and in expectancy may be created and limited therein in the same manner. 2 Kent, *353; 4 Kent, *282; *Burleigh* v. *Clough,* 52 N. H. 267, 278; *Sampson* v. *Randall,* 72 Me. 109. In case of a sale of the property, the tenant for life and devisees or legatees in remainder would take the same interests in the proceeds, respectively, as they had in the property. The income would go to the widow, and the principal at her death to the children. *Ackerman* v. *Gorton, supra.*

The general rule applicable to the construction of wills is that the intention of the testator, as collected from the whole instrument, is to govern, provided it be not inconsistent with the rules of law. The purpose of the testator in this case was that his property should be used and preserved for the exclusive benefit of his family. Any construction which would permit any part of the estate to be diverted, for the benefit of strangers to his blood or affections, is inadmissible unless necessarily resulting from the terms of the will. To effect

this purpose, the general scheme of testamentary disposition appears to have been to give his surviving wife a life-estate in all his property, real and personal, with the right to enjoy the use and possession thereof, and to make a future provision for the children through an equal distribution thereof among them at her death, with a superadded provision for the support and education of the children.

1. The express provision or limitation of a life-estate, with remainder over, so plainly defines the nature of the estate and interest intended to be given to the widow that the subsequent clauses cannot be construed as enlarging it into a fee, though the language used therein may create a charge or power of disposition in certain contingencies upon or over the capital fund. The general rule is stated by Chancellor Kent as follows: "If an estate be given to a·person generally or indefinitely, with a power of disposition, it carries a fee, unless the testator gives to the first taker an estate for life only, and annexes to it a power of disposition of the reversion. In that case, the express limitation for life will control the operation of the power, and prevent it from enlarging the estate into a fee." 4 Kent, *535. "Words'of implication do not merge or destroy an express life-estate, unless it becomes absolutely necessary to uphold some manifest general intent." Id. *319; *Burleigh* v. *Clough,* 52 N. H. 267, 277. This was the common-law rule, under which a devise to one generally, without words of inheritance, or otherwise indicating an intention to grant a greater interest, passed an estate for life only. An estate thus given generally, with a power of disposition, by implication carried the fee. But then, and now since the statute, an intention to convey a less estate, expressed or clearly implied, will control. 4 Kent, *537; Gen. St. 1878, c. 47, § 2; *Jackson* v. *Robins,* 16 John. 537, 558, 559; *Johnson* v. *Battelle,* 125 Mass. 453; *Stuart* v. *Walker,* 72 Me. 145.

The contention that in this case the widow took any greater interest or estate than that of a tenant for life cannot be supported; that is. to say, the authority to use or dispose of any part of the property or principal, implied from the language of the will or the charge therein imposed for the support of the children, is the grant of a power and not of property. *Herring* v. *Barrow,* L. R. 13 Ch. Div. 144.

2. In the clause embracing the gift of the remainder to the children on the death of the wife, we find the words, "and which, or any part of the estate and property then left by her, shall be divided among my children." This clearly implies a power to use some part of the principal or capital, if it should be found necessary, for the support of the widow and the maintenance and education of the children, so long as provision for such purpose should be reasonably necessary. This construction is warranted from the language in furtherance of the general purpose of the testator in making provision for his family. The use of such words in a devise after the limitation of a life-estate has given rise to a considerable discussion in the courts, which seem more or less divided in opinion as to the effect to be given them. In *Blanchard* v. *Blanchard*, 1 Allen, 223, the court thought that the words "that may be left at the death" of the life-tenant added nothing, and meant simply the property left after the life-estate had terminated; while the same court, in *Paine* v. *Barnes*, 100 Mass. 470, concede that under the authorities the words "if anything should remain," in a like case, implied a power of disposition by the life-tenant. So, in *Johnson* v. *Battelle*, 125 Mass. 453, the words "whatever of said estate remains unexpended" implied a similar power of disposition, if it appeared necessary for the support of the life-tenant. In *Green* v. *Hewitt*, 97 Ill. 113, 117, the words "whatever remains" were referred to the anticipated condition of personal property when turned over to the remainder-man, some part of which would necessarily be worn out, lost, or consumed in the natural course of things during the tenancy of the first taker.

The construction in each case will, of course, turn largely upon the peculiar language used and its connection. Thus, in *Martin* v. *Eaton*, 57 N. H. 154, the words "remaining property," used after provisions for payment of debts and erection of grave-stones, gave no additional authority to the life-tenant. The construction in *Green* v. *Hewitt* was doubtless too narrow, because, with the exception of items of perishable property, which it might, perhaps, be the duty of the life-tenant to sell, convert into money, and invest, the grant of such personal property as might wear out and perish in the using during such tenancy would necessarily imply the right to so wear it out or

consume it. *Martin* v. *Eaton, supra.* In some cases, also, good management would require that certain kinds of personal property, as stock or utensils on a farm, should be disposed of and replaced, the property substituted following the course of the original bequest. *Groves* v. *Wright,* 2 Kay & J. 347, 351, 352; 1 Schouler, Pers. Prop. § 140.

But in *Henderson* v. *Blackburn,* 104 Ill. 227, 232, it was held that the words "if there is anything left" implied a power of disposal of the entire estate, or such part of it as might be necessary for the use of the life-tenant. A similar conclusion was reached in *Clark* v. *Middlesworth,* 82 Ind. 240, 246, where the testator devised all his property, real and personal, to his wife during her life, "and at her death, should anything remain, the same to be divided among my heirs-at-law." So in *Brandow* v. *Brandow,* 66 N. Y. 401, on the death of the life-tenant it was provided that all the estate, real or personal, which might *"be found* then" should be equally divided among the testator's children. There the property was given to the widow for life, and she was charged with the duty of caring for and educating the children. She was held entitled to use the *corpus* of the property, if necessary, for the support and education of the minor children. In this case the language, "and which or any part of the same then left by her," is sufficient to indicate an intention on the part of the testator to grant the right to use some portion of the *corpus* of the estate, upon the condition that it should be found necessary in order to give effect to the intention of the testator.

3. In respect to the provision for the support and education of the children by the life-tenant, it is to be construed in connection with the clauses of the will which we have just been considering. Though the word "condition" is used, it is clear that the obligation on her part to provide for their support and education is a continuing one, at least as long as it should be reasonably necessary. If she consents to take under the will, she is bound by its provisions; and she is required to make such provision "out and from said property left her," in consideration of the gift and devise made to her. She is therefore to use the property for their benefit as well as her own. The property is charged in her hands as tenant for life; and

as a devise of the use of property for life is a devise of the property for such term, (*Farmers' Bank* v. *Moran*, 30 Minn. 165;) so a charge upon the property so devised is a charge upon the rents, income, and profits issuing therefrom to which the life-tenant is entitled. And, besides, the charge, though fastened upon the property in her hands, is also a personal burden upon her. She is required to discharge this duty, and is responsible for it out of the devise or gift made to her. 4 Kent, *540, note *c;* *Gardner* v. *Gardner*, 3 Mason, 178, 208; *Taft* v. *Morse*, 4 Met. 523. If the property remained unsold,—as an improved farm, with stock and utensils, for instance, occupied by the family,—the rents and products thereof, if sufficient for the support of all, should be so applied, and their support would thus be provided out of the property.

We think this construction best accords with the purpose of the testator as manifested by the several clauses of the will read together. That is to say, the income is to be applied to the support of the widow and maintenance and education of the children; and in case the same should prove insufficient, so much of the capital fund may be so used as shall be reasonably necessary therefor. She is not to use the principal while the income is sufficient. This intention would appear more clearly, perhaps, if the clause providing for the support of the children had immediately followed the devise to the wife; but it makes no difference in the construction of the will. The power to sell and convert the property is conferred on the executors, and not on the widow. This is not inconsistent with her right to appropriate such portion of the capital fund as may be proper. The clause granting this power to the executors operates as a restraint upon the power of disposition by the widow, but the several clauses must be construed together and in subordination to the purpose of the testator as manifested by the entire instrument, and the power given to the executors must be exercised so as to secure to her the benefit and enjoyment of the estate as provided by the will.

4. In such cases it is not the practice to require of the life-tenant a bond as a condition of the delivery of the property, nor of its retention, unless there is danger of its being wasted, secreted, or removed. But an inventory should be filed, as was directed in this case, and the

life-tenant, upon a proper showing of real danger, may be called to account and required to give bonds. And doubtless her executors would be liable to account from her estate for any destruction or loss of the principal caused by an abuse of her trust. 2 Kent, *354; 1 Schouler, Pers. Prop. § 152; *Sampson* v. *Randall*, 72 Me. 109; *Burleigh* v. *Clough*, 52 N. H. 267, 283; *De Peyster* v. *Clendining*, 8 Paige, 295; *Jones* v. *Simmons*, 7 Ired. Eq. 178.

The case is remanded, with directions to modify the judgment in conformity with this opinion, and charging the income of the estate primarily with the support and education of the children.