## MARY C. JOHRDEN and Others v. EDWARD N. POND.[1]

July 3, 1914.

Nos. 18,641—(179).

**Will — instruction to convert into money — death of beneficiary — vested remainder — descent to surviving husband.**

The testator devised a life estate in all his property, real and personal, to his wife. The will provided that after her death the property should be converted into money and specific sums should go to three daughters named, and the balance to a fourth daughter named. The fourth daughter outlived her father, was married after his death, and predeceased her mother, leaving no issue. Her husband survived her. It is *held:*

(1) That the provision in the will for a sale and division of the property amounted to an equitable conversion as of the date of the testator's death.

(2) That the daughter now deceased took a vested estate in remainder upon the death of the testator.

(3) That upon her death her estate passed to her husband.

In the matter of the estate of George F. Hamilton, deceased, Mary C. Johrden, Anna Lord and Jane McGrath, formerly Jane Power, appealed from the final decree of the probate court for the county of Wilkin to the district court for that county. The appeal was heard upon stipulated facts by Flaherty, J., who in all things affirmed the decree. From the judgment of the district court entered pursuant

[1] Reported in 148 N. W. 112.

---

Note.—The question of equitable conversion by directing sale after devising land is discussed in a note in 39 L.R.A. (N.S.) 817.

to the order for judgment, the persons named above as appellants appealed to this court. Affirmed.

*Boyesen & Flor* and *Wolfe & Schneller,* for appellants.

*Purcell, Divel & Perkins,* for respondent.

DIBELL, C.

This is an appeal from a judgment of the district court of Wilkin county, affirming a judgment of the probate court decreeing the payment of the sum of $2,444.27 to Edward N. Pond as the surviving husband and sole heir-at-law of Matilda Hamilton Pond, a daughter of the testator.

George F. Hamilton died on April 2, 1902, testate. His will was duly probated. The only part of it important here is paragraph 2, which is as follows:

"Second: After the payment of such funeral expenses and debts, I give, devise and bequeath to my wife, Anne Hamilton, all my real and personal property (situated within said town, county and state) as aforesaid during her life, and, after her death, the real and personal property will be sold and divided as follows: To my daughter, Mrs. Jane Power, $250; to my daughter, Mrs. Anna Lord, $250; to my daughter, Mrs. Mary Johrden, $250; and the balance, after deducting expenses, is to go to my daughter, Matilda Hamilton."

The testator's wife died in 1911. Matilda Hamilton, who intermarried with Edward N. Pond after her father's death, died in 1909, without issue, leaving surviving her her husband.

At the termination of the life estate the property was sold as directed by the will. The three daughters were paid $250 each as directed by the will. There was left $2,444.27, which Pond claims as the heir of his deceased wife. The three daughters claim it as heirs of their father.

1. The provision in the will for the sale of the property at the termination of the life estate, and its payment to the legatees in the proportions fixed by the will, constituted an equitable conversion. Such equitable conversion took place on April 2, 1902, the date of Hamilton's death. Greenman v. McVey, supra, page 21, 147 N. W. 812.

2. The legacy granted to the daughter now deceased was an estate in remainder. It vested at the time of her father's death. It was a future estate but not contingent. It comes within the definition of vested remainders as defined by our statute, R. L. 1905, § 3202 (G. S. 1913, § 6663). There were persons in being who would have the immediate right of possession upon the termination of the life estate. This is the test of the statute. The estate vested in interest upon the death of the testator and in possession upon the termination of the life estate by the death of the mother. Life estates and estates in remainder may be created in personalty as well as in realty. In re Oertle, 34 Minn. 173, 24 N. W. 924, 57 Am. Rep. 48.

The result which we have reached is questioned by appellant, upon the ground that the will did not intend to vest a present estate in Matilda. It is argued that the absence of words of present grant or gift indicate an intent that the legacy should not vest at the death of the testator. We do not attach so much importance to the absence of direct words of grant or gift. The provision that upon the termination of the life estate devised the property shall be sold and certain portions be divided in a manner specified, "and the balance * * * is to go to my daughter, Matilda Hamilton," leaves no serious question of the testator's intent. A will is to be construed by a view of it as a whole and not by giving an arbitrary effect to the presence or absence of particular words or phrases. In Brookhouse v. Pray, 92 Minn. 448, 100 N. W. 235, it was said:

"The cardinal rule repeatedly adopted by this court is that the instrument will be taken by its four corners, and the intent of the testator determined therefrom, if possible, provided that it be consistent with rules of law. * * . * As such instruments always vary, subtle rules of construction, so often resorted to, obstruct, rather than assist, in determining the intention of the testator."

To the same effect are In re Swenson's Estate, 55 Minn. 300, 56 N. W. 1115; Yates v. Shern, 84 Minn. 161, 86 N. W. 1004.

In the Brookhouse case, where bequests were made with the provision that if the legatees died without issue and before payment made to them then the bequests should fail, and they died before

payment and without issue, the court, in determining whether the interests had vested, said:

"We place no stress upon the fact that the time for distribution had not been reached. This alone does not prevent the immediate vesting of the estate, as a legacy to be paid at a specified time in the future is not contingent, and vests immediately, in the absence of other conditions expressing a contra intent."

In the will under construction there are no words signifying a contrary intention. There is no residuary devise except in so far as that to Matilda is such. There is no limitation to such of the testator's children as may be living at the time of the termination of the life estate devised—a very usual limitation, when the intent of the testator is that a legatee dying before the termination of the life estate shall not participate; nor is it a direction of the will that the property shall be sold at the termination of the life estate and divided among the testator's children, suggesting an inference that his then living children are meant.

The estate in remainder vested in Matilda at the time of her father's death. The following cases have been found useful in the investigation of the branch of the case now under consideration: In re Oertle, 34 Minn. 173, 24 N. W. 924, 57 Am. Rep. 48; Fox v. Hicks, 81 Minn. 197, 83 N. W. 538, 50 L.R.A. 663; Smith v. Smith, 116 Wis. 570, 93 N. W. 452; O'Connor v. Halpin (Iowa) 147 N. W. 185; Haviland v. Haviland, 140 Iowa, 611, 105 N. W. 354, 5 L.R.A.(N.S.) 281. See also Armstrong v. Armstrong, 54 Minn. 248, 55 N. W. 971; Minnesota Debenture Co. v. Dean, 85 Minn. 473, 89 N. W. 848; Watkins v. Bigelow, 93 Minn. 361, 101 N. W. 497.

3. The remainder vested in Matilda at the time of her father's death passed to her surviving husband under the statute. This is a necessary result of the holding that the estate in remainder vested at the time of the testator's death.

Judgment affirmed.