IN THE MATTER OF THE ESTATE OF JAMES D. ANDERSON.

## ELIZABETH ANDERSON v. KATHERINE L. BROWER AND OTHERS.[1]

January 7, 1921.

No. 22,092.

**Will — intent of testator to be followed — "legal heirs."**

1. The cardinal purpose in construing a will is to reach the intent of the testator. The viewpoint of the testator is to be considered, and, while the technical meaning of words is not to be overlooked, it will not be followed if thereby the testator's intent is not given effect. Words such as heirs or legal heirs may, to give effect to the intent of the testator, be held to refer to others than those who are technically heirs, or to exclude those who are technically heirs.

**Trust — construction of term "legal heirs."**

2. The will of the testator, who was childless, created a trust in his

[1]Reported in 180 N. W. 1019.

executors, and directed the payment of a stipulated sum monthly to his widow. The residue was to go to a so-called adopted son when he became 30, if he should be worthy to have it in the judgment of the executors, and if in their judgment he was not, the residuary estate was to go to the testator's "legal heirs." *Held* that the widow did not come within the term "legal heirs," as meant by the testator, but that by such words he meant his blood relatives.

In the matter of the estate of James D. Anderson, deceased, Elizabeth Anderson, his widow, petitioned the probate court for Lake county for an order requiring the executors to transfer to her all the property of the estate. The heirs of testator, respondents, filed objections to the petition. From an order, Martin, J., denying her petition, Elizabeth Anderson appealed to the district court for that county where the appeal was tried before Fesler, J., who made findings and affirmed the order of the probate court. From the order affirming the order of the probate court, Elizabeth Anderson appealed. Affirmed.

*Washburn, Bailey & Mitchell,* for appellant.

*Samuel B. King, John C. Dwan,* and *Baldwin, Baldwin, Holmes & Mayall,* for respondents.

DIBELL, J.

On November 28, 1906, James D. Anderson died in Toronto, Canada, a resident of Two Harbors, Lake county, Minnesota. His will, dated September 10, 1906, was probated in Lake county. His widow, Elizabeth Anderson, elected to take under the will. In 1919 she petitioned the probate court for an order requiring the executors to transfer to her all of the property of the estate. Her theory was that she was entitled thereto as sole residuary devisee, upon the failure of the devise to Willie J. Anderson, contingently the sole devisee. The probate court denied her petition. Upon her appeal the district court affirmed the order of the probate court.

The only question is whether Mrs. Anderson is the residuary devisee. The solution of the question involves the construction of the will, which, omitting formal parts and provisions relative to three bequests of $1,000 each to two sisters and a niece, is as follows:

"I will and direct that my executors shall invest all of my assets so that they realize at least five per cent per annum and out of the interest received I desire that my executors pay to my wife the sum of Fifty Dollars monthly as long as she lives.

"To my adopted son, Willie J. Anderson, when he reaches the age of twenty-five years, I direct my executors to pay to him the sum of Five Thousand Dollars, if in the joint opinion and judgment of the executors he is capable of investing the money safely. And the remainder of my estate to be paid to him at the age of thirty years, if he is then able to show the said sum of Five Thousand Dollars previously paid to him to be in reasonably sound and safe assets. The executors are to be the sole judges of the conduct and ability of the said Willie J. Anderson.  *  *  *

"If my adopted son, Willie J. Anderson, chooses to go to school, as I should like to have him do, in that event I direct my executors to retain the amount of my life insurance policy of One Thousand Dollars in the New York Life Insurance Co. for the purpose of his education in such a manner as to them may seem best. In the event of his not desiring to attend school then the above One Thousand Dollars reverts to my estate.

"I will and devise all the rest and residue of my estate to my son Willie J. Anderson, to be paid to him when he reaches the age of thirty years, if my executors deem it advisable. Should my executors not deem it advisable to pay over to my adopted son Willie J. Anderson, the residue of my estate on arriving at the age of thirty years, in that event, I direct that the portion to be paid to him when he reaches the age of thirty years, be paid to my legal heirs.

"In case the corpus of my estate is not sufficient to produce the said sum of Six Hundred Dollars annually hereinbefore provided for for the subsistence of my wife, then I direct that my wife, Elizabeth Anderson, shall receive all the interest that my estate will produce when invested as aforesaid.

"I will and direct that all my insurance policies on my life namely: One policy of Five Thousand Dollars in the New York Mutual Life Insurance Company, and one policy of One Thousand Dollars in the

New York Life Insurance Company, and one policy in the Commercial Traveller's Mutual Benefit Association of London, Ontario, shall be, and they are hereby made payable to my executors hereinafter named for the purposes of this will, and for the purposes of carrying out the above provisions made for my wife and the said Willie J. Anderson, and if the said insurance policies are payable otherwise than to my executors, they are hereby changed and altered so as to be payable to my executors and to be treated and invested by my executors in the manner hereinbefore directed as to the corpus of my estate.

"I direct that the said Willie J. Anderson be given a home by my wife until he reaches the age of twenty-one years, and I direct that my executors pay her Three Hundred Dollars per year for his maintenance, and if my wife should die before he reaches twenty-one years, I direct that my executors provide a home for him out of the interest received from my estate until he reaches the age of twenty-one years. * * *

"Lastly, I make, constitute and appoint, G. P. Schofield, Manager of the Standard Bank of Canada, Toronto, Ontario, Mrs. Katherine L. Wells, my sister in the city of Chicago, Illinois, United States, and John A. Barton, Cashier of the First State Bank of Two Harbors, Minnesota, to be executors of this my last will and testament, hereby revoking all former wills made by me."

In 1919 when Willie became 30, the executors exercised their discretion against giving him the residuary estate, and it is conceded that their discretion was properly exercised. Mrs. Anderson now claims that she is the sole heir and entitled to the residuary estate.

1. The cardinal purpose in the construction of a will is to reach the intent of the testator. The situation is to be viewed as things were when the will was made. The viewpoint of the testator is to be considered. The authorities hardly need be cited. In re Oertle, 34 Minn. 173, 24 N. W. 924, 57 Am. Rep. 48; Whiting v. Whiting, 42 Minn. 548, 44 N. W. 1030; In re Swenson's Estate, 55 Minn. 300, 56 N. W. 1115; State v. Willrich, 72 Minn. 165, 75 N. W. 123; Yates v. Shern, 84 Minn. 161, 86 N. W. 1004; Brookhouse v. Pray, 92 Minn. 448, 100 N. W. 235; Davis v. Hancock, 95 Minn. 340, 104

N. W. 299; Rong v. Haller, 109 Minn. 191, 123 N. W. 471, 806, 26 L.R.A.(N.S.). 825; Johrden v. Pond, 126 Minn. 247, 148 N. W. 112; Barney v. May, 135 Minn. 299, 160 N. W. 790.

It is sometimes said that the intent of the testator is to be derived by a "four-cornered" view of the will. Words used may or may not be given their technical meaning. They are to be given such meaning as gives effect to the real intent of the testator. Such words as heirs, or legal heirs, though their technical significance is not to be overlooked, may, to give effect to the testator's intent, be held to refer to others than those who are technically heirs and may exclude those who are technically heirs. In re Swenson's Estate, 55 Minn. 300, 56 N. W. 1115; Gardner, Wills, p. 386; 2 Woerner, Adm. § 423; 2 Alexander, Wills, § 851; note L.R.A. 1918A, 1108, 1110; note ·Ann. Cas. 1915D, 1173.

2. We do not have the evidence. We are to construe the will from the face of it with such aid as the findings give.

The will, while it did not use the word trust, was a devise in trust to the executors. The two who qualified are discharging the trust.

The testator had no children. It is clear that he did not anticipate issue. Neither his age nor that of Mrs. Anderson is shown. Willie was 17 when the will was made and became 30 in 1919. It is fairly inferable that his foster parents were not young. The testator did not make his widow an executor. He entrusted the duties of caring for the estate to a banker in Ontario, a banker in his home city, and a sister in Chicago. The will cites that he is himself a retired banker. No provision is made as to what shall happen in the event of Willie's death prior to the death of Mrs. Anderson. Such a contingency was not anticipated. Nor does it seem that it was anticipated, or if so it was not deemed of consequence, that Mrs. Anderson might outlive the time when Willie would become 30.

Running through the will is seen the definite purpose of the testator to provide for Mrs. Anderson during life. A definite amount was assured her. He did not have in mind that she would ever have from his estate more than the allowance. If Willie became entitled to the residue he was to have it at 30, but the whole estate was charged

with the allowance to the widow for life. If Willie did not take it the testator's legal heirs were to have it. In our view, when he used the words "legal heirs," he meant his blood relatives and not Mrs. Anderson. The widow is of course the statutory heir of her deceased husband. The testator did something not at all unusual. Having no children, and expecting none, he first made provision for his wife for life. He gave the residue to his so-called adopted son, for whom he seems to have had great affection, but the gift was contingent upon his being worthy to have it in the judgment of the executors. The residuary gift failing, the testator preferred that it go to his blood relatives rather than directly or indirectly to his wife's relatives.

The probate court and the district court construed the will correctly.

Order affirmed.

HALLAM, J. (dissenting).

I dissent:

In my opinion, it was the intent of the testator that in the event the bequest to his adopted son should fail, the residue bequeathed to him should pass to whomever might be the testator's "legal heirs" under the laws of the state. I find nothing to indicate that the words used were intended in any other than their ordinary sense.

BROWN, C. J. (dissenting).

I concur in the view of Justice Hallam.