IN THE MATTER OF THE ESTATE OF ISAAC FREEMAN, DECEASED.

SARAH M. BUCK AND ANOTHER v. B. W. HUNTLEY AS EXECUTOR AND OTHERS.[1]

March 17, 1922.

No. 22,606.

Will—intent of testator not to be defeated by technical rules of construction.

1. In the construction of a will the end sought is the intent of the testator. This must be found from an examination of the will as a whole. Recognized rules of construction are not to be overlooked, but they are not technical guides which will be followed to a result contrary to the intent derived from the reading of the will as a whole.

Construction of bequest to deceased stepchild.

2. The testator gave to his wife all of his personal property and a life estate in his real property. He directed that within one year after her death his executor should convert his real estate into money. He bequeathed the proceeds to his children and stepchildren and certain grandchildren. He provided that if any legatee, who was a child or stepchild, should die prior to the time he received his bequest, then the same should be paid and was willed to the heirs at law of such legatee. The bequest involved upon this appeal was to a stepchild who died after the testator's death, but before the death of the testator's wife, leaving her husband her sole heir. He died prior to the death of the testator's wife. At the death of the testator's wife a sister and half-sister were the sole heirs of the legatee. It is *held*, that the intent of the testator was that the estate, otherwise passing to such legatee,

[1]Reported in 187 N. W. 411.

should pass to her heirs at the time of the death of his wife, rather than to the heirs of the deceased husband of such legatee, and that the sister and stepsister took the bequest under the will by purchase and not by descent.

The last will of Isaac Freeman, deceased, was admitted to probate in the probate court for Fillmore county. The court, Michener, J., distributed the estate among the heirs after the death of the widow. From the final decree, Michener, J., Sarah M. Buck and Lindley Otis Stockdill, as executor of the estate of William F. Stockdill, deceased, appealed to the district court for that county where the appeal was heard by Catherwood, J., who affirmed the order of the probate court. From the judgment of the district court, appellants appealed. Affirmed.

*Hopp & Larson,* for appellants.
*Parker & Gullickson,* for respondents.

DIBELL, J.

This is an appeal from the judgment of the district court of Fillmore county affirming the judgment of the probate court decreeing the proceeds of certain property, belonging to the estate of Isaac Freeman, to the heirs of Mabel M. Stockdill, who was one of his legatees.

On July 11, 1903, Freeman made his will. On August 3 following he died. He left surviving him his wife, Olive Freeman, one child by her, and three children of a former marriage. Mrs. Freeman had been married before and had living two children by her first husband. One of them was Mabel M. Stockdill, the wife of Samuel Stockdill.

The testator gave his wife his personal property, and a life estate in his real property, and charged her with the duty of keeping the buildings insured and rebuilding in case of destruction. The will then provided as follows:

"Upon the death of my said wife, I order, direct and empower my executor hereinafter named, to within one year thereafter sell and convey to the purchaser my real estate and all thereof and convert my said estate into money, and for that purpose I hereby empower

him to so sell my real estate and to convey the same to the purchaser thereof without an order from the probate court, and I trust and require that my said executor shall use his best efforts to secure the best possible price therefor and after converting said estate into money and paying all expenses herein provided and debts and funeral expenses and the expenses of administration up to that time, I order direct will and bequeath the same to the following named persons in such share and amount as follows:    *    *    *

"Third.  To my wife's daughter Mabel M. Stockdill the sum of five hundred (500) dollars."    *    *    *

"Sixth.  To my six grandchildren who are the children of my son I. L. Freeman, to-wit:  Harold. Freeman, Mearle F. Freeman, Mildred S. Freeman, Henry L. Freeman, Wayland I. Freeman and Wayne E. Freeman, the sum of twenty-four hundred ($2,400) dollars to be divided equally between them share and share alike, and I order and direct that my said executor shall hold the share going to each of my said grandchildren until he or she arrives at full age, and if possible invest the same and account to each for the interest and profits of his share less reasonable compensation of executor. Should any of my said grandchildren die before reaching lawful age without issue then the share going to him or her hereunder shall be equally divided between the other said grandchildren but should said child leave issue such issue shall take said child's share by right of representation.  Should any of my other legatees herein named die prior to the time he or she receives his or her bequest hereunder, except my said wife, then the same shall be paid to and is hereby willed to his or her heirs at law as the case may be.  Should my said estate after sale as above provided amount to more than enough to pay the legacies above provided then I order, direct, will and bequeath that the said excess shall be divided between my said legatees pro rata as the amounts above provided shall bear to the whole sum to be divided and in case the same shall not be sufficient to pay said legacies the deficiency shall be borne by each legatee pro rata as his bequest shall bear to the whole.  I have made no bequest to my son I. L. Freeman he having already had his share of my estate."

Mrs. Freeman died on May 3, 1918. In 1907 Mabel M. Stockdill died leaving her husband Samuel her sole heir. In 1910 Samuel Stockdill died leaving his father and mother his sole heirs. They died in 1919. The appellants claim, through the father and mother, the bequest of $500 to Mabel M. Stockdill, which, by reason of the pro rata addition provided for by the will, now amounts to $1,056.90. The sister and half-sister of Mrs. Stockdill, the half-sister being a daughter of Freeman, are her only living heirs. They claim the bequest. The probate court decreed it to them, and the district court affirmed its decree.

1. In the construction of a will the primary object is the ascertainment of the intent of the testator. The will is to be read as a whole. All of its separate clauses must be considered. Disconnected provisions will not be permitted to destroy its meaning. It has become a common expression that the meaning of a will must be gathered from everything within its four corners and from its reading as a whole. In re Swenson's Estate, 55 Minn. 300, 56 N. W. 1115; Yates v. Shern, 84 Minn. 161, 86 N. W. 1004; Brookhouse v. Pray, 92 Minn. 448, 100 N. W. 235; Johrden v. Pond, 126 Minn. 247, 148 N. W. 112; In re Bell, 147 Minn. 62, 179 N. W. 650; In re Estate of J. D. Anderson, 148 Minn. 44, 180 N. W. 1019. Rules of construction, derived from experience and found helpful, are not overlooked, but they are not technical guides which will be followed to a result contrary to the intent derived from the reading of the will as a whole. In re Bell, 147 Minn. 62, 179 N. W. 650, and cases cited.

2. The appellants claim that the will vested a remainder in Mrs. Stockdill, under the definition of a vested remainder given by G. S. 1913, § 6663, which passed by descent to her husband upon her death. Their contention is not without force, and Johrden v. Pond, 126 Minn. 247, 148 N. W. 112; Brookhouse v. Pray, 92 Minn. 448, 100 N. W. 235, and other cases, are cited in support of it.

The rule is that a will speaks as of the death of the testator, and that an early vesting of an estate is favored, but this rule will not be applied so as to defeat the testator's intent. In re Bell, 147 Minn. 62, 179 N. W. 650, and cases cited. If it was the intention of Free-

man that the bequest to Mrs. Stockdill should vest in right, without a contingency or limitation, except the postponement of enjoyment, effect should be given to his contention, and upon her death her husband, her then sole heir, took.

If it was the intention of the testator that the bequest to Mrs. Stockdill should go to her heirs, determined as of the time of the death of Mrs. Freeman, or at the time of distribution, then the sister and half-sister of Mrs. Stockdill, her then sole heirs, take the bequest.

The will provides that upon the actual conversion of the real estate into money, within a year after Mrs. Freeman's death, "I order direct will and bequeath the same to the following named persons," one of whom, Mrs. Stockdill, was to receive the bequest here involved, and that in the event of the death of a legatee of a class to which Mrs. Stockdill belonged, prior to receiving the bequest, "then the same shall be paid to and is hereby willed to his or her heirs at law as the case may be."

Our view, in harmony with that of the trial court, is that the intention of the testator was that the heirs of a legatee, who should participate in the estate in the event of the legatee's death prior to receiving the bequest, were such as were heirs at the time of the death of Mrs. Freeman. The time fixed by the will for enjoyment was of the substance of the gift, determining both the time of the vesting and those who should take. The then heirs of Mrs. Stockdill took under the will and not as her heirs. They took by purchase and not by descent. This construction finds support in Savela v. Erickson, 138 Minn. 93, 163 N. W. 1029, and in In re Bell, 147 Minn. 62, 179 N. W. 650. In the latter case a trust under a will was construed.

The will of Freeman does not purport to create a trust, such as was created in the Bell estate, but the practical result is much the same. See In re Anderson's Estate, 148 Minn. 44, 180 N. W. 1019. The rule of construction applied in the Bell case, where there was a direction to the trustee to divide and pay in the future, is persuasive here. In Johrden v. Pond, supra, it was thought of importance, in support of the construction there made in favor of a vested remain-

der, that there was no limitation to those living at the termination of the life estate, nor a direction that the estate be then sold and divided among the children of the testator which would have suggested children then living. In the Savela case and the Bell case the authorities are collated and discussed. We have examined all the cases cited by counsel. They have been helpful in the construction of the will before us, but along with other courts we have often remarked that the language of one will is infrequently decisive in the construction of another. A review of the cases is not worth the while.

The construction of the will, in view of the situation arising from the death of Mrs. Stockdill before Mrs. Freeman, when distribution was to be had, and the subsequent death of her then sole heir, also before the death of Mrs. Freeman, is not free of difficulty, but after an extended consideration we are of the opinion that the district court and probate court gave effect to the testator's intent.

Judgment affirmed.