ESTHER E. LEVINGS v. FIRST NATIONAL BANK AND TRUST COMPANY AND OTHERS.[1]

June 22, 1934.

No. 29,929.

[1]Reported in 255 N. W. 828.

144

*Elliott, Coursolle & Kelly* and *George H. Smith,* for appellant.
*Cobb, Hoke, Benson, Krause & Faegre,* for respondents.

*HOLT, Justice.*

Plaintiff appeals from the judgment entered upon the pleadings and a stipulation of the parties.

The real question presented by the appeal is: Did William S. Levings take a vested interest in the estate of his father, under the father's will? If he did, plaintiff, his wife, succeeded thereto, since he died without issue. The pertinent parts of the will of William H. Levings, the father, after providing for the payment of the expenses of administration, his debts, and bequeathing household goods, jewelry, and certain personal effects to his wife, Eleanor Y. Levings, are:

"Third. I give, devise and bequeath all the rest and residue of my estate, of whatever nature and wherever situated, to Minneapolis Trust Company * * * as trustee, and unto it and its successors in trust for the following uses and purposes, namely, to invest and reinvest the same and to pay the entire net income therefrom (subject to the provisions hereinafter made for Grace V. Kathan) unto my said wife, Eleanor Y. Levings, each year in convenient installments and so much of the principal as may be neces-

sary in the judgment of my said trustee to support and maintain her in the manner and style in which she has been accustomed to live.
\* \* \*

"Upon the death of my said wife, Eleanor Y. Levings, my said trustee shall transfer, set over and deliver the residue of my estate then remaining in its hands (except such part as may have been reserved by it pursuant hereto to provide an annuity for said Grace V. Kathan) in equal shares to my children then living, the child or children then living of any deceased child of mine taking the parent's share by right of representation. Upon distribution of the residue of my estate the share going to my son, William S. Levings, or to his children, if he be then deceased, shall be charged with the sum of Eight Thousand Dollars ($8,000.00) and interest at Five Per Cent (5%) per annum thereon from the date hereof, for the reason that I have this day given him a residence valued at that amount."

The other provisions of the will relate to the payment of $2,400 a year to Grace V. Kathan as long as she remains and lives with his wife, and upon the death of his wife the trustee shall set aside an amount that will yield at least the sum of $3,500 yearly, holding the same invested so as to pay to Grace V. Kathan $3,500 per year during her life, and at her death the said trust fund so invested shall be distributed by the trustee "in the same manner and to the same persons as herein provided for the distribution of the residue of my estate." Plenary power is given the trustee to deal with the estate in any manner it deems proper until the distribution.

The trustee named in the will now bears the name of First National Bank and Trust Company. The will was made May 28, 1923, and testator died January 10, 1930, leaving his wife, Eleanor Y. Levings, aged 72, two daughters, aged 47 and 41 years, and one son, William S. Levings, aged 45 years, the husband of plaintiff, who died December 4, 1932, leaving no children. Thereafter and subsequent to the commencement of this action, Eleanor Y. Levings died. The daughters of testator are married and have children.

The contention of plaintiff is that her husband, under his father's will, took a vested remainder or share in the estate; that of de-

fendants is that he took a contingent remainder, contingent upon his surviving the life tenant. It is to be noted that testator devised and bequeathed his property to his trustee in trust for specified purposes. First comes the provision for the annuity to Grace V. Kathan. Subject thereto, his wife is to receive during her life all the income and whatever may be necessary of the *corpus* of the trust to maintain her in her accustomed style of living. There is no direct bequest to the children; they are not mentioned as beneficiaries. However, since a trust is created for the use of his wife during her life, he intended a disposition of the remainder to his children, and this is done by the direction to the trustee to distribute what remains when the death of his wife occurs. This direction is expressed in language so clear and definite as to leave no room for construction, viz.

"Upon the death of my said wife, Eleanor Y. Levings, my said trustee shall transfer, set over and deliver the residue of my estate then remaining in its hands (except such part as may have been reserved by it pursuant hereto to provide an annuity for said Grace V. Kathan) in equal shares to my children then living, the child or children then living of any deceased child of mine taking the parent's share by right of representation."

The only other reference to any child of testator is the one above quoted which provides for deduction of $8,000 from the share "going to my son, William S. Levings, or to his children, if he be then deceased." This, if anything, indicates that it was not contemplated that his share should go to the son's heirs, his wife, for the deduction is only to be made in case the son is living when the distribution to the remainderman is made, or if he be dead, leaving children, the deduction is to be made from their shares. We are mindful of the rule that favors the early vesting of remainders. Unless the intention is clearly expressed otherwise, the remainderman takes a vested interest as of the time of the testator's death. Possession and enjoyment may be postponed.

"Rules of construction, derived from experience and found helpful, are not overlooked, but they are not technical guides which

will be followed to a result contrary to the intent derived from the reading of the will as a whole." Buck v. Huntley, 151 Minn. 446, 449, 187 N. W. 411, 412, where it was held that a direct bequest did not vest on the death of the testator but upon the death of the life tenant, when distribution was directed to be made.

In Armstrong v. Armstrong, 54 Minn. 248, 249, 55 N. W. 971, the children of testator to whom was willed the estate upon the death of their mother took a contingent, not a vested, remainder—the trust being for the benefit of his wife for life "and after her death for the benefit of my children (or their survivors) in the proportion that each would be entitled to under law." Other cases in this court of some aid here are Johrden v. Pond, 126 Minn. 247, 148 N. W. 112, 113; Savela v. Erickson, 138 Minn. 93, 163 N. W. 1029; Heffelfinger v. Appleton, 144 Minn. 208, 175 N. W. 105; In re Will of Bell, 147 Minn. 62, 179 N. W. 650, 653. In Johrden v. Pond, 126 Minn. 247, 148 N. W. 112, the devise was to wife for life, and after her death the property was to be sold and out of the proceeds specific bequests of $250 to each of three daughters were to be paid and the balance to another daughter, who died married, after testator's death but prior to the death of her mother, the life tenant. In holding that this daughter took a vested and not a contingent remainder, the court said [126 Minn. 250]:

"There is no limitation to such of the testator's children as may be living at the time of the termination of the life estate devised—a very usual limitation, when the intent of the testator is that a legatee dying before the termination of the life estate shall not participate; nor is it a direction of the will that the property shall be sold at the termination of the life estate and divided among the testator's children, suggesting an inference that his then living children are meant."

In the case at bar the distribution is directed to be made "upon the death of my said wife" (who had the life estate) in equal shares to "my children then living, the child or children then living of any deceased child of mine taking * * * by right of representation." In order to participate in the distribution, the child must

be living at that time or else have left a child or children then living who could take by right of representation. In In re Will of Bell, 147 Minn. 62, 179 N. W. 650, the intention of the testator was considered to confine the beneficiaries to his lineal descendants, and it is said [147 Minn. 69]:

"It is characteristic of a class legacy that, on the death of a member of the class, the survivors succeed to his interest in the legacy, even though the testator has not specifically directed that they should take the share of the deceased member of the class."

It was there held that the husband of a daughter of the testator, who died after the decease of testator but before the time set for distribution of the estate, could not participate. Buck v. Huntley, 151 Minn. 446, 450, 187 N. W. 411, has no particular application except this:

"That the intention of the testator was that the heirs of a legatee, who should participate in the estate in the event of the legatee's death prior to receiving the bequest, were such as were heirs at the time of the death of Mrs. Freeman. The time fixed by the will for the enjoyment was of the substance of the gift, determining both the time of the vesting and those who should take."

In re Estate of Sherk, 191 Minn. 143, 253 N. W. 365, holds that the testator intended to vest the remainder in the grandchildren at the death of the life beneficiary. From other jurisdictions we may cite the following cases tending to show that the proper construction here is that the children of testator did not take a vested remainder on his death: Dept. of Public Works & Buildings v. Porter, 327 Ill. 28, 158 N. E. 366; White's Trustee v. White, 86 Ky. 602, 7 S. W. 26; Young v. Young, 97 N. C. 132, 2 S. E. 78; Clark v. Cammann, 160 N. Y. 315, 54 N. E. 709.

For plaintiff it is contended that 2 Mason Minn. St. 1927, § 8043, is of controlling weight, which declares that future estates are either vested or contingent, and defines the two. We do not think this statute was intended to control a testator in respect to the time that a bequest should take effect or vest. The important matter here is not any statute, but the language of the will. It is not

unlawful to postpone the vesting of the remainder until the life estate ends. Under its plain terms is it possible to say that testator intended any child or the children of any deceased child of his to have a share in his estate unless alive when the life estate terminated? After studying the many cases and authorities cited in' plaintiff's exhaustive brief, we are in accord with the conclusion thus expressed by the learned trial court:

"The court has made careful study of the authorities so presented but is compelled to fall back ultimately upon the simplest and most fundamental of all rules for the construction of wills, namely, the rule that the plainly expressed intention of the testator must prevail.

"The word 'then' appears three times in the disputed clause of the will. It is used first in the expression 'then remaining,' which necessarily refers back to the words 'upon the death of my said wife,' thus fixing definitely and with certainty the time when the 'residue' as such comes into existence. It cannot well be argued that the word 'then' in this setting does not refer to and depend on the death of the testator's wife. Clearly it does so refer and depend.

"The testator then proceeds in the same sentence to provide that such residue shall go 'in equal shares to my children then living, the child or children then living of any deceased child of mine taking the parent's share by right of representation.' The words 'then living' where they first occur in this provision, following in close sequence after the words 'then remaining,' must also, by necessary construction, relate back to the words 'upon the death of my said wife,' occurring previously in the same sentence, and the words 'then living,' where they occur the second time in this provision, can have no different relation or construction. To hold that the words 'then living,' as they appear twice in this context, relate back to the time of the death of the testator, would involve an exceedingly strained construction and, in the opinion of the court, would do violence to the plainly expressed intention of the testator."

Of the many authorities cited by plaintiff the one that comes the nearest giving some ground for her contention that her husband

took a vested remainder is Connelly v. O'Brien, 166 N. Y. 406, 408, 60 N. E. 20. The will there was:

"I give all my estate, real and personal, after the payment of my debts, to my wife Rose during her life and then to such of my children as may then be alive, share and share alike."

The word "then" was construed to refer to the time of enjoyment and not to the time of vesting. The remainder was held vested on the testator's death. Learned discussions concerning vested and contingent remainders are found in Smaw v. Young, 109 Ala. 528, 20 So. 370, and McArthur v. Scott, 113 U. S. 340, 5 S. Ct. 652, 28 L. ed. 1015; but they can be of no assistance here where the intention of testator is so clearly expressed that his estate was to remain in trust until his wife died and then the residue was to be transferred and delivered by the trustee only to the children then living, and to the child or children then living of any deceased child of his. Reluctantly we reach the conclusion that testator deliberately specified that the remainders should not vest until his wife passed away. Accordingly, the declaratory judgment that plaintiff has no interest in the residue of the trust fund is right.

The judgment is affirmed.