IN RE ESTATE OF FRANK JENNRICH.
JERRY R. RYAN v. IDA SCHMIDT AND OTHERS.[1]

No. 30,849.

April 17, 1936.

[1]Reported in 266 N. W. 461, 267 N. W. 143.

*Kennedy & Kennedy,* for appellant.
*Henry Marks,* for respondents.

HOLT, JUSTICE.

The appeal is from a judgment of the district court affirming a final decree of distribution of the probate court in the estate of Frank Jennrich, deceased.

Frank Jennrich died testate July 22, 1933, a resident of Ramsey county, this state, leaving him surviving, three sons and six daughters, all of age. His will was admitted to probate August 25, 1933. Letters testamentary were issued September 1, 1933, and one year from that date was given for settling the estate. The executor filed his final account, and hearing thereon was set for September 25, 1934, but at the request of the executor the hearing was continued until January 29, 1935, at which time the attorney for the appellant appeared and requested a continuance until February 5, 1935. When the final account was filed by the executor he had on hand sufficient funds to pay all debts, funeral expenses, expenses of last sickness, cost of administration, and the specific bequests made in the will. On January 14, 1935, Minnie Ryan, one of the testator's daughters, died, leaving surviving a husband but no issue. March 25, 1935, the probate court made its final decree of distribution, under which decree the share that would have been decreed to Minnie Ryan, had she then been alive, was distributed to her brothers and sisters as directed in the will. Her husband, as administrator of her estate, appealed to the district court, and from the judgment affirm-

ing the decree of the probate court the husband, Jerry R. Ryan, appeals.

The parts of the will of some bearing on the questions involved in this appeal are: Paragraph 2, wherein personal property consisting of the household furniture, books, wearing apparel, jewelry, and the like is bequeathed to his daughter Lydia Petzel, "if she be living at the time that a final decree shall be entered by the Probate Court in my estate; if she be not then living, then such personal property is hereby bequeathed to my daughter, Florence Calvin, if she be living at such time; if she be not living, then such personal property is bequeathed to my daughters who may then be surviving me." By paragraphs 5 and 6 he devised the homestead to one daughter, against which should be charged $4,000 as an advance, and he refers to conveyances made to other children as well as advances to them for which they have given receipts, and that he intends to make further conveyances and advances. Then there is a provision that the conveyances and advances made should be so treated that those children who had received no advances would in the final distribution be placed on equal footing with those who had received money or property by way of advances. "No interest shall be charged against my said children on account of any advancement made or to be made to them either by me or by my executor after my death during the course of the administration of my estate." There were no advances made by the executor. By paragraphs 7 and 8 bequests of $500 were made to each of seven named grandchildren and of $1,000 to his housekeeper. Then follow these paragraphs:

"9. All the rest and residue of my property, real or personal, and wherever situated and of whatsoever kind or nature, I give, bequeath, and devise to my children, Ida Schmidt, Frank Jennrich, Jr., Henry Jennrich, Minnie Ryan, Florence Calvin, Margaret Barry, Charles Jennrich, Tillie Frisacker, and Lydia Petzel, in fee, and in the following proportions, namely:

"Each of my daughters shall receive an undivided 5-54ths and each son shall receive an undivided 8-54ths, subject only to the

proper deductions to be made on account of the advancements which may have been made to them or either of them.

"10. I do hereby direct that none of my said children shall be allowed to assign, sell, or hypothecate in any manner any interest which they may have coming from my estate before they actually receive possession thereof.

"11. In the event that any of my sons shall die before they receive their share of the estate in full, then such share not received by them shall descend to the wife of such deceased son during her natural life, or so long as she remains my son's widow. If she remarries again, or upon her death, such share shall descend to the issue of my son, if any be living, and if there is no issue living, then such share shall be divided among my children who shall be surviving such deceased son or sons.

"12. In the event that any of my daughters die after my death without leaving issue, and before my estate is settled, so much of my estate coming to my said deceased daughter or daughters as shall not have been turned over to my said deceased daughter or daughters shall then descend to my children who shall survive such deceased daughter or daughters."

Paragraph 13 provides that if any child die prior to testator's death the share coming to such deceased child shall descend to the living issue of such deceased child, and if there be no living issue, then such share shall descend equally to the remaining children living at testator's death. The 14th paragraph directs that those of his children who have received the least in advancements shall receive the first advanced payment from the executor so as to place them on a footing as nearly equal as possible with those of his children who have received advancements.

Appellant's assignments of error are directed against the conclusions of law awarding the share of Minnie Ryan to her brothers and sisters who were living at the time the final decree was rendered. It is urged (a) that the language of paragraph 12 cannot be construed as showing an intention to divest Minnie Ryan of the fee title vested in her at testator's death by paragraph 9; (b) that

if the language of paragraph 12 be construed as changing the positive provisions of paragraph 9, paragraph 12 becomes repugnant to paragraph 9 and void; (c) and that even if paragraph 12 be construed as limiting paragraph 9, it could not extend beyond the time allowed by law for closing the estate, and Minnie Ryan could not be deprived of her inheritance by the dilatory tactics of testator's executor.

Among the rules for construing wills appellant invokes the ones that devises vest early, usually upon the death of testator, and that where a title in fee is devised a subsequent paragraph in the will cannot retake or limit the estate already disposed of absolutely. All rules of construction are primarily for the purpose of arriving at the intention of the testator in disposing of his property. When that intention appears it is controlling, unless violative of some statute. We think this is the purport of these authorities, cited by appellant, *viz.:* In re Estate of Martin, 166 Minn. 269, 207 N. W. 618; In re Estate of Wadsworth, 176 Minn. 445, 223 N. W. 783; In re Estate of Hasey, 192 Minn. 582, 257 N. W. 498. As stated in Elberg v. Elberg, 132 Minn. 15, 17, 155 N. W. 751:

"The rules guiding courts in the construction of wills are too well settled to justify discussion or restatement. The sole province of the court in all such cases, where the terms of the will are in doubt, is to ascertain and give effect to the intention of the testator. When such intention is found from the will, taken in all its parts, it is conclusive and must be applied. 3 Dunnell, Minn. Dig. § 10257." See also In re Estate of Freeman, 151 Minn. 446, 187 N. W. 411.

It appears from the first bequest in the will that testator had in mind that title and possession should vest at the time of the rendition of the decree of distribution. There also appears a definite plan and purpose that in case of the death of any daughter, after testator's death without issue and before his estate was settled, her husband was not to have any part of the share of the daughter not turned over to her, but it was to descend to his remaining children. In the case of the death of a son under the same conditions as a

daughter, there was a limitation over subject to a life estate in the son's widow or until she should marry. Testator had made advancements to some of his children when the will was made, and he intended to make advances to others with the purpose of vesting title at once in the child who received and receipted for such advance; but he was determined that until each child had received his or her full share in testator's residuary estate no interest therein should vest in the child. This clearly appears by paragraph 10, which directly follows paragraph 9. While paragraph 10, standing alone, may not be effective as a limitation, it is indicative of testator's intention to postpone the vesting of a child's interest in the residuary estate until the time of the rendition of the final decree. No child could demand of the executor his or her share of the residue of testator's estate until the decree of distribution was rendered. Nor could the estate be "settled" until such decree was made. By the last paragraph of the will (17), the executor is authorized to sell and convey any part of the estate, real and personal, provided testator's children are given the first opportunity to buy any real estate which testator may own at the time of his death; and testator ends the will with this clause: "my said executor is authorized and directed from time to time when the conditions of my estate will permit, to make advancements in such amounts and of such values to any or all of my children as shall seem necessary and proper in each case." It seems clear from the entire instrument that the child's share in the residuary estate was not intended to vest until it was received by such child either by way of advancement or by way of a decree of distribution in accordance with the will. This conclusion refutes the contentions (a) and (b) made by appellant as above stated.

As to the other contention, (c), that the estate was settled when the children, including Minnie Ryan, in November executed the agreement adjusting the advancements and the amounts that remained in the residue for each child, that agreement was not a division of the residuary estate. It was made to facilitate the settlement of the estate and the entry of the final decree of distribution. It is true, the executor had filed his final account in August

168

and a hearing had been set for September 25, 1934, but was continued from time to time thereafter until January 29, 1935, on which date appellant appeared and asked for a continuance until February 5, 1935. After the hearing the probate court in March, 1935, allowed the account and entered the final decree of distribution. It is also claimed in that connection that the dilatory tactics of the executor could not prevent the vesting in Minnie Ryan, at least as soon as the agreement mentioned was signed by all the children in November, 1934, about two months before Minnie Ryan's death. We might speculate as to why she did not either ask for an advancement from the executor, as he was by the last quoted clause of the will authorized to make, or demand an earlier hearing on the final account and a decree of distribution. There is nothing in the record indicating that the delay was not entirely in accordance with her desires. Appellant cites and relies on cases cited in 8 L.R.A.(N.S.) 180, annotations of March v. March, 186 N. Y. 99, 78 N. E. 704, an opinion by a divided court; Calkins v. Estate of Smith, 41 Mich. 409, 1 N. W. 1048; Petition of Spencer, 16 R. I. 25, 12 A. 124. The language of the wills involved is so different from that of the instant case as to be of little aid here. We may add Starr v. Willoughby, 218 Ill. 485, 75 N. E. 1029, 2 L.R.A.(N.S.) 623, where a paragraph of the syllabus reads:

"The clear intention of the testator, shown from the entire will, to postpone the vesting of an estate until the period of distribution, must be carried out notwithstanding the fact that the law favors the vesting of estates."

In Calkins v. Estate of Smith, 41 Mich. 409, 1 N. W. 1048, the court found from language in the will an intention that the $1,000 gift there in controversy vested before the decree of distribution was to be made. There is nothing in the record upon which to predicate dilatory tactics of the executor to prevent the vesting of the share of Minnie Ryan in the residuary estate of her father.

The judgment is affirmed.

UPON APPLICATION FOR REARGUMENT.

On May 8, 1936, the following opinion was filed:

PER CURIAM.

In the opinion it was said of the agreement signed by the legatees in November, 1934: "That agreement was not a division of the residuary estate. It was made to facilitate the settlement of the estate and the entry of the final decree of distribution." It was not intended by the words quoted to express an opinion as to the binding effect of the agreement upon the signers; but to show that the district court as well as the probate court could view the purpose of the agreement to be to speed a final distribution in accord with the direction of the will.

The petition for a rehearing is denied.