64

IN RE TRUSTEESHIP UNDER WILL OF ALBERT SCHMIDT.
FIRST NATIONAL BANK OF MINNEAPOLIS v. FRIDA
KIRSCHMANN AND OTHERS.
WILLIAM P. ROGERS, ATTORNEY GENERAL OF THE
UNITED STATES, APPELLANT.

97 N. W. (2d) 441.

June 19, 1959—No. 37,515.

66

*Dallas S. Townsend,* Assistant Attorney General, *George E. Mac-*

*Kinnon,* United States Attorney, District of Minnesota, *Kenneth C. Owens,* Assistant United States Attorney, *George B. Searls, Irwin A. Seibel,* and *Paul J. Spielberg,* Attorneys, Department of Justice, for appellant.

*Walter U. Hauser* and *John H. Farley,* for respondents.

NELSON, JUSTICE.

Albert Schmidt died testate February 7, 1937. His last will and testament bearing date May 22, 1929, was duly admitted to probate on March 29, 1937, by order of the probate court of Hennepin County. The testator placed a sum in trust under the second paragraph of his will as follows:

"Second: *I give and bequeath* the sum of One Hundred and Thirty-five Thousand Dollars ($135,000.00) in cash and/or securities selected by my Executor out of my estate, at their value as appraised in the probate of my estate, *to Arthur J. Lampert, of St. Paul, Minnesota, and First Minneapolis Trust Company * * * as Trustees, and unto them and their successors in trust for the following uses and purposes,* namely: to invest and reinvest the same, and to make the following payments, from the net income, if sufficient, and if not, then also from principal, namely:

"(a)  The sum of * * * ($900.00) per annum in quarterly installments unto Anna Marie Fuchss, of Eisenach, Germany, granddaughter of my deceased sister, Sophie Saalfeld.

"(b)  The sum of * * * ($900.00) per annum in quarterly installments unto Mrs. Frida Kirschmann, of Trunsbach by Hersfeld, Germany, daughter of my deceased sister, Sophie Saalfeld.

"(c)  The sum of * * * ($900.00) per annum in quarterly installments unto Sophie Gut, of Montabaur, Germany, daughter of my deceased sister, Mrs. Else Duntze.

"(d)  The sum of * * * ($900.00) per annum in quarterly installments unto Louise Gut, of Dusseldorf, Germany, daughter of my deceased sister, Mrs. Else Duntze.

"(e)  The sum of * * * ($1,800.00) per annum in quarterly installments unto my sister, Mrs. Frida Wolff, now of Hersfeld, Germany. All of said payments shall be made during the time hereinafter limited.

"In the event of the death of any of said beneficiaries during the continuance of this trust, or prior to my decease, then the payment hereinbefore provided for such deceased beneficiary shall thereafter be made to her issue, if any, taking by right of representation, or failing such issue, to the remaining beneficiaries in equal shares, or to their issue, taking by right of representation.

*"At the end of twenty (20) years after my decease, or upon the death of the last survivor of said named beneficiaries, if they shall all die before the expiration of said twenty (20) year period, this trust fund as then constituted and remaining in the hands of my said Trustees shall go and be distributed in equal shares to said named beneficiaries, or to the then living issue of such beneficiaries who may then be deceased, taking by right of representation, and the trust shall thereupon terminate.*

"If at the time hereinbefore fixed for the termination of this trust, none of said beneficiaries should be living, and there should be no issue any of them surviving, then the trust fund remaining in the hands of my said Trustees shall be by them transferred, set over and delivered to my then living heirs at law, determined according to the intestate laws of the State of Minnesota then in force.

"If at the end of any year during the term of said trust there shall be any income left, after making the payments as hereinbefore provided, such net income shall be added to the principal and invested and reinvested as herein provided for principal, and shall be distributed at the time provided for distribution of principal hereunder as a part of the principal of said trust fund.

*"If at the time hereinbefore provided for the termination of said trust and the distribution of the trust fund,* it shall amount to less than * * * ($135,000.00) fair value, *as then determined by my said Trustee,* they shall, before making distribution of said principal, add sufficient property from the residue of my estate (held by them in trust under paragraph Fourth of this my Will) to bring the amount of the trust fund for distribution up to the fair value of * * * ($135,000.00), as determined by my said Trustees." (Italics supplied.)

The residue was placed in trust under the fourth paragraph of the will and the corpus of the residue made payable at the end of the trust

period to an American, subject to the conditions in the second paragraph.

When the United States declared war on Germany, the Trading with the Enemy Act (50 USCA App. § 1, et seq.) became operative to permit seizure of enemy property. On March 11, 1942, the president established the Office of Alien Property Custodian by Executive Order No. 9095, which was amended by Executive Order No. 9193, July 6, 1942, and Executive Order No. 9567, June 8, 1945 (50 USCA App. § 6, p. 43). On August 21, 1946, the Alien Property Custodian executed Vesting Order No. 7481, which was filed with the division of the Federal Register on August 30, 1946, and published on September 4, 1946 (11 F. R. 9727). Later, Executive Order No. 9788, October 14, 1946 (11 F. R. 11981), transferred all rights and functions of the Alien Property Custodian to the Attorney General, the appellant herein. Hereinafter the terms "custodian," "Alien Property Custodian," and "Attorney General" will be considered interchangeable terms.

The aforesaid Vesting Order No. 7481 vested in the Alien Property Custodian the property described as follows: "All right, title, interest and claim of any kind or character whatsoever of * * * [the named beneficiaries and their issue, known and unknown] and each of them, in and to the Trusts created under the Will of Albert Schmidt, * * *." Such a vesting order is known as a "right, title and interest vesting order" as opposed to a "res vesting order," in which the custodian vests the property itself instead of certain persons' interests in it. See, Clark v. Edmunds (W. D. Va.) 73 F. Supp. 390, 393.

Pursuant to court order, the trustee has been paying the annuities to the Alien Property Custodian and his successor, the Attorney General.

The term of the trust having expired February 7, 1957, the First National Bank of Minneapolis, as successor trustee, on March 14, 1957, petitioned the District Court of Hennepin County for an allowance of trustee's final account, approving payments of annuities to the Attorney General of the United States; authorizing final distribution and providing for discharge of trustee; and instructing trustee as to distribution of the corpus of the trust and other relief. The Attorney

General filed an answer in which it is alleged that he has, as successor to the Alien Property Custodian and by virtue of the said 1946 vesting order, succeeded to all the title, right, and interest of the persons named or described in the trust created under the second paragraph of the testator's will; that he is exclusively entitled to the distribution of the trust principal, income, and accretions thereto bequeathed to the above-designated German beneficiaries; and that the persons named and described therein no longer have any right, title, or interest in and to the corpus of the said trust. The answer prays that the trustee be directed and ordered to distribute to the Attorney General the entire principal including any accretions of income or principal of the trust.

The court issued its order allowing trustee's final account on June 20, 1957, retaining jurisdiction for the purpose of later determining the distribution of the trust fund. On December 31, 1957, it entered its supplemental order authorizing final distribution. The court, having jurisdiction as a proceeding in rem, found that the entire net remaining assets of the trust estate, after payment of fees and necessary disbursements, should be distributed in equal shares to Frida Kirschmann, Sophie Gut, Louise Gut and Frida Wolff (also known as Frieda Wolff) and authorized the trustee to make such distribution forthwith. The order was based upon reasons set forth in a memorandum attached and incorporated therein. The Attorney General appealed to this court from the foregoing order.

It does not appear that the respondents in this case are protesting the right of the Attorney General to the annuities it may have seized, but the respondents do maintain that the trust established two separate rights; first, the right to receive an annuity, and second, the right to receive the corpus of the trust in futuro subject to a condition precedent and based upon a contingency which has now occurred.

Respondents contend that the vesting order in no wise changes the terms of the trust and that the Attorney General can succeed to only those interests which the remaindermen had while they were enemy nationals, and specifically call attention to the fact that the only vesting order issued was the one of August 21, 1946, and that the time for distribution of the corpus of the estate had not ripened until Feb-

ruary 7, 1957. They further contend that the public was without any interest in withholding the property from the German beneficiaries after June 24, 1953, by reason of the following occurrences: On October 19, 1951, a joint resolution of Congress (65 Stat. 451) terminated the state of war between the United States and the government of Germany, and it provided that German property which had been vested, or which, before January 1, 1947, was subject to vesting, would retain its prior status in that respect. By implication it terminated the power of the Attorney General to vest property which was not subject to vesting prior to that date. On June 24, 1953, General License No. 101 was issued (18 F. R. 3687) licensing property previously blocked but providing that the license would not affect property which had been vested by the Attorney General and making certain other exceptions not important here. 8 C. F. R. § 511.101.

We think that the joint resolution and the general license brought to an end the public policy of preventing German nationals from holding assets in the United States. All this seems to be in accord with the following statement by President Truman in a letter dated July 9, 1951 (97 Cong. Rec. 7762), asking that Congress terminate the state of war with Germany: "This action * * * will * * * create a firmer foundation for the developing structure of peaceful and friendly relationships *and will remove disabilities to which German nationals are subject.*" (Italics supplied.)

■ Since it is conceded that the only vesting order issued was No. 7481 on August 21, 1946, the sole question seems to be whether the interest of the German beneficiaries in the corpus of the trust at that time was such that it might legally be termed an interest capable of being vested or seized by the Attorney General under the Trading with the Enemy Act or whether it was only a contingent interest which under the laws of this state would not vest until the contingency occurred or until after the condition precedent had been met. See, Security-First Nat. Bank v. Rogers, 51 Cal. (2d) 24, 330 P. (2d) 811. In GMO. Niehaus & Co. v. United States (Ct. Cl.) 170 F. Supp. 419, the court held that property acquired by German aliens after December 31, 1946, was not subject to vesting under Trading with the Enemy Act. Also see, GMO. Niehaus & Co. v. United States, 139 Ct. Cl. 605, 153 F. Supp. 428.

Pursuant to testamentary directions in the instant case no part of the corpus became subject to vesting in any beneficiary until February 7, 1957, 20 years after the testator's death. The only attempt to reach the corpus since August 21, 1946, is the Attorney General's intervention in the present proceedings.

In Clark v. Edmunds (W. D. Va.) 73 F. Supp. 390, 394, it appears that the custodian, under a right, title, and interest vesting order, sought possession of the res in which the enemy alien had only a contingent remainder. The court denied his motion for summary judgment and stated that:

"* * * It would seem to follow that no beneficiary would take anything unless he or she survived the war. If no beneficiary survive, then this bequest would lapse and become a part of the residuary estate. Therefore, conceding that the Custodian has acquired all the right, title and interest of all the beneficiaries, he nevertheless was not entitled to the fund or any part of it at the time of his vesting order, nor is he so entitled now. He must await the termination of the war to determine whether or not the interests which he seized will be entitled to the fund or not. A similar conclusion was reached by the Court in Re Kielsmark's Will, 188 Iowa 1378, 177 N. W. 690, 11 A. L. R. 156."

It appears to have been made clear in Clark v. Edmunds that a right, title, and interest vesting order does not give the custodian authority to determine just what right, title, and interest the enemy national has, but that the custodian had, by instituting the action, submitted to the court the question of what right, title, and interest had been reached by the vesting order. It was shown by that case that the custodian takes only that right, title, and interest which the legatee has at the time the vesting order is issued.[1]

Another action was commenced after the war with Germany was officially terminated. In that case, Brownell v. Edmunds (W. D. Va.) 110 F. Supp. 828, 833, the court, in denying custodian's motion for summary judgment, stated:

"* * * However, under my construction of the will, the interests of the legatees did not vest until the date of the legal termination of

---

[1]See, 37 Cornell L. Q. 116, 117.

the war, and at the moment of the termination of the war, when the interests of the legatees became vested, the legal efficacy of the vesting order terminated. By the express terms of the Trading With the Enemy Act, the Alien Property Custodian is only authorized to vest in himself for the benefit of the United States, property of enemy nationals during the time of war. Miller v. Rouse, supra, Matheson v. Hicks, D. C., 10 F. 2d 872, Sutherland v. Guaranty Trust Co., 2 Cir., 11 F. 2d 696.

\* \* \* \* \*

"Having reached the conclusion that the plaintiff is not entitled to the fund here in controversy, it would be my desire to render a judgment requiring the payment of the fund to the members of the family of the late Johannes Suhling residing in Germany, as such, in my opinion, would be carrying out the plain and obvious intention of the testatrix. However, with regret, I reach the conclusion that such a judgment is precluded by the Rule against Perpetuities."

The court's attitude in the foregoing case towards the confiscation of the property of aliens, at a time when it would serve no purpose to benefit and protect the United States in time of war, prompted the court to make the following observation (110 F. Supp. 835):

"\* \* \* I do feel prompted to observe that the money which the plaintiff in this action is attempting to appropriate for the use and benefit of the United States is not German money at all. It is distinctly American money, part of the estate of a native born American citizen, who, pursuant to a laudable purpose, undertook to bequeath it to her late husband's family, who happened to be German nationals."

Brownell v. Edmunds, *supra,* was affirmed in Brownell v. Edmunds (4 Cir.) 209 F. (2d) 349, in which the similarity with the case here involved is apparent. The court there said (209 F. [2d] 352):

"\* \* \* Since the gift is postponed until the happening of a designated contingency, the determination of the membership of the class, 'my husband's family,' would not be ascertainable until the happening of the contingency and would include all members of the class then in being including those born after the death of the testator. \* \* \*

"Even if the rule against perpetuities be disregarded, we think it

clear that the bequest was not subject to seizure under the statute and regulations relied on. The pertinent provision of the Trading with the Enemy Act, Section 7(c), 50 U. S. C. A. Appendix, § 7(c), subjects to seizure only property 'belonging to or held for, by, on account of, or on behalf of, or for the benefit of, an enemy' and the pertinent portion of the regulation promulgated thereunder, being sections 2(c) and (f) of the order dated July 6, 1942, Executive Order No. 9095, as amended, 50 U. S. C. A. Appendix, § 6 note, subjects to seizure:

\* \* \* \* \*

"Under the bequest here under consideration, none of the \* \* \* [German families] was to take anything until the end of the war, when the country of which they were nationals would cease to be an enemy country. As they were to take no interest in the property covered by the bequest unless they survived the war, no property vested in them or was held for their benefit by reason of the bequest so long as the war was going on. See McGrath v. Ward, D. C., 91 F. Supp. 636; Harvard Trust Co. v. Attorney General, 329 Mass. 79, 106 N. E. 2d 269."

■ The court below indicated in its memorandum that the difference between the Edmunds case and the instant case is very slight; that the important similarity is that the interest of the legatees was contingent and that who the legatees would be—just who would eventually become entitled to the fund—could not be determined until some time in the future. In the Edmunds case, the persons in whom the fund would become vested was determined at the date on which the war ended; in the case at bar it was to be determined either at the death of the last survivor of the legatees or at the end of the 20 years. It is clear from the trust provisions in both cases that part of the fund or corpus, or all of it, might become vested in persons who were not in being at the death of the testator. In the Edmunds case, the interests became vested the day the war ended, and in the instant case the corpus could not vest until nearly 6 years after the war ended, and 4 years after the time when interests of German nationals had been freed. In the case at bar any legatee would either take as one of the named legatees, or as one of the surviving legatees of deceased named legatees, or by

right of representation through named legatees. The testator, however, left nothing undone to control the disposition of the corpus and provided that if there were no named legatees or issue thereof surviving at the termination of the trust, the legacy would pass, under the terms of the will, to the living heirs at law of the testator according to the intestate laws of Minnesota then in force. It is clear that under the testator's bequest none of the legatees or their issue was to take anything from the corpus of the trust fund either until the death of all the named legatees, if that contingency should occur, or the end of 20 years.

Both of the Edmunds cases have been cited with approval in Brownell v. Hartford-Connecticut Trust Co. (D. Conn.) 147 F. Supp. 929. In that case the trustee was directed by the terms of the trust to pay the income to certain designated persons or let it accumulate until friendly relations should be resumed between the United States and Germany, at which time the corpus was to be divided among the remaindermen who were citizens of Germany. The interests of the Germans were vested by the custodian in 1947 and action was brought by the Attorney General to enforce the order. The named contingent remaindermen moved to intervene. It was held that (147 F. Supp. 931):

"* * * although the Custodian can peremptorily determine there is an obligation owing to an enemy national, the 'capture of rights' under a will does not determine these rights unless possibly in a case where the vesting order itself measures the rights, but merely substitutes the Custodian as the legatee. Subrogated generally to the legatee's rights, the Custodian must proceed as any other legatee to secure his rights. It was in such a posture that the Custodian proceeded in * * * Edmunds * * *.

"* * * The Attorney General succeeds to only those interests which the remaindermen had while they were enemy nationals. But the trust is subject to two possible constructions. If the remainder interest was vested subject to defeasance on a condition subsequent, the remainder would vest at the speaking of the will, at a time when the remaindermen were enemies, and the Attorney General would succeed to their interests. However, if the remainder interest was not vested, and vested only on the condition precedent of the termination of hostilities, then the remaindermen would have had no interests under the will while

they were enemies, and the Attorney General would succeed to nothing. Thus while the seizure order may be peremptory, the success of this seizure depends entirely on the construction of the will. If there is to be a construction of this will between the present parties, the contentions of the foreign remaindermen will not be represented. The Trustee * * * cannot be held liable to the foreign remaindermen for its conduct of the case. Section 7(e), Title 50 U. S. C. A. Appendix. And yet the foreign remaindermen and the Hartford Probate Court will be bound by this court's determination of the testamentary trust. * * * it seems that intervention should be allowed under Rule 24(a)(2), Fed. Rules Civ. Proc. * * * to the extent that the remaindermen may contest the construction of the testamentary trust and remainder."

In Brownell v. Mercantile Trust Co. (E. D. Mo.) 139 F. Supp. 834, the Attorney General sought possession of the corpus of a trust under which certain German nationals were to receive the corpus upon the discretionary determination of the trustee that he should make such distribution. It was held in that case that since the Attorney General could stand in no better position than the beneficiaries, and the beneficiaries could not require the trustee to make distribution, the Attorney General could not reach the corpus of the trust. The court said (139 F. Supp. 835): "The vesting order in no wise changes the terms of the trust."

Cases concerning the custodian's rights in contingent interests under a right, title, and interest vesting order have been analyzed as follows in 37 Cornell L. Q. 116:

"Trusts in which an alien has no present or vested future interest have been left unscathed. A series of decisions have developed the doctrine that neither the corpus nor income of a trust in which an alien person has but a contingent interest as determined by the governing law may be vested by the Custodian, while a present or vested alien interest is subject to vesting."

It is clear in the instant case, from the terms of the trust, that the testator has provided for a gift over, or what may be referred to as a substitution or an alternative gift, in a situation where nothing but personal property is involved. Payment or division has not been postponed

to let in a prior estate. This trust presents a situation where testator's direction is to distribute the corpus to persons whose identity is not to be determined until the time fixed for distribution. It is akin to a situation where the direction to the trustee is to distribute to the "legal heirs" after the termination of the life estate, or according to the statutes of distribution, or where there is some contingency or event upon the happening of which the ascertainment of the distributees is to be determined. The naming of the beneficiaries, though persuasive, is not conclusive of vesting under the decisions of this state. In connection with that phase of the subject, consideration should be given to the suggestion that a class gift may be intended even though the beneficiaries are named if the context shows that the testator was group minded. See, Annotation, 75 A. L. R. 780. If and when a will contains no direct gift except as implied from a direction to pay and divide, one may at least start with the presumption that the gift is contingent and that futurity is annexed to the substance of the gift rather than to the mere delivery of possession. A review of the authorities including texts clearly indicates that any of the foregoing rules merely create a presumption which can be overcome by other factors showing a contrary intention on the part of the testator.

In this case we are concerned with a personal-property fund. It has been said that perhaps no question can arise more doubtful in its nature, or less referable to fixed and certain rules and principles, than are the words of a devise or bequest constituting a vested or contingent remainder. Courts have concluded that the word "after" indicates futurity of gift, whereas "when" simply indicates postponement of possession. Other cases have held that the use of the word "after," when stressed, is an indication of postponement of the gift, and the words "shall then be divided" have been held to show futurity of gift. A time-worn method of stating the test for contingency is that "If futurity is annexed to the substance of the gift, the vesting is suspended; but if it appears to relate to the time of payment only, the gift vests at once."[2]

■ One of the beneficiaries here died before the trust terminated

---

[2]See article by Berick, *The "Divide and Pay-Over Rule" in Ohio,* 14 U. of Cin. L. Rev. 391, and cases cited.

without leaving issue. We think it clear under the Minnesota cases that where vesting of a legacy is contingent upon the beneficiary surviving until a certain time or the happening of a certain event, and he dies before that time, he has not benefited from the gift and in such case he has nothing to pass to his heirs. A case that has been repeatedly cited in this state is In re Trust Under Will of Bell, 147 Minn. 62, 68, 179 N. W. 650, 652, wherein the court said:

"* * * It is to be noted moreover that there is no gift in the will except by way of a direction to the trustee to divide and pay at future times. The enjoyment of the gift is postponed. * * * time is annexed to the substance of the gift as a condition precedent. In such cases the general rule is that the legacy does not vest until the time for payment arrives."

As stated in 19 Dunnell, Dig. (3 ed.) § 9888b:

"A beneficiary must comply with the conditions precedent prescribed by the trust instrument to acquire any rights under it."

Giving due credit to the Bell case, this court, in First and American Nat. Bank v. Higgins, 208 Minn. 295, 313, 293 N. W. 585, 594, said:

"A future gift is vested when the right to receive it is not subject to a condition precedent. Where the right to receive the gift is immediate and only the time of payment is postponed, the gift vests immediately. Where the right to receive the gift is postponed until after and is made to depend on the happening of a named event or condition, the gift is contingent and vests in the future. Futurity is then said to be annexed to the substance of the gift. Survival of the donee until the time of payment is a condition precedent to his right to receive the gift. Annotation, L. R. A. 1918E, pp. 1099-1101. A gift is contingent and does not vest until the time or happening of the event named where the only words of gift are a direction to a trustee to pay and distribute or divide and pay over at a future time or upon the happening of a specified event. * * * The reason for the rule is that such a direction refers to the future and not to the present and hence can only be executed in the future."

It appears from the briefs that both parties have cited cases

relating to trusts of real property as bearing upon the question of contingency in this case. An example of such cases is First and American Nat. Bank v. Higgins, *supra*. Since those cases deal with trusts of real property the remainders contained therein were statutory future interests as determined by M. S. A. 500.10, et seq. It has been made clear, however, by the decision of this court in Congdon v. Congdon, 160 Minn. 343, 200 N. W. 76, that the statutory future interests provided for in c. 500 of our statutes do not include future interests in personal property. Such future interests are still regulated by the rules of the common law in this state. The gift of the corpus to the German beneficiaries was to become effective, if they survived, 20 years after the death of the testator and hence was a gift in futuro. Such a gift having no intermediate freehold established to support it, and being subject to the condition of survivorship, could not have existed at common law except as an executory devise. While at common law questions as to the vested or contingent nature of executory interests were not frequently presented, it was apparently the view that executory interests were not vested until they were actually reduced to possession. Gray, Rule Against Perpetuities (4 ed.) § 114; Simes and Smith, Law of Future Interests (2 ed.) § 230; 1 American Law of Property, §§ 4.31, 4.53.

As indicated in First and American Nat. Bank v. Higgins, *supra,* several factors must be considered when attempting to classify a remainder as vested or contingent. It is required that the court exercise its judgment in evaluating the various factors and assigning to these factors various degrees of importance in different cases. Since certain fixed rules and principles do not govern every situation in the field of vested and contingent remainders, one legal author has commented that: "In fact, since the courts have a wide latitude within which the decision may be supported by adequate authority, the result is that they are exercising a kind of discretion when they determine that a requirement of survivorship does or does not exist in a given case, and an even greater discretion in determining whether the condition is precedent or subsequent." Simes and Smith, Law of Future Interests (2 ed.) § 576, p. 13.

Gray, in his Rule Against Perpetuities (4 ed.) § 108, has charac-

terized the common-law view of vested and contingent remainders as follows:

"* * * Whether a remainder is vested or contingent depends upon the language employed. If the conditional element is incorporated into the description of, or into the gift to, the remainderman, then the remainder is contingent; but if, after words giving a vested interest, a clause is added divesting it, the remainder is vested."

See Fraser, *Future Interests in Property in Minnesota,* 4 Minn. L. Rev. 307, where the same view is expressed. It would seem fair to assume then that the common-law rule means in effect that the testator's intent shall determine whether a remainder is vested or contingent. If so, then it may also be assumed that the factors set forth in the Higgins case as the guide to the testator's intent represents a decision based on the common-law rule. This we think is to be distinguished from the more technical approach favoring the vesting of remainders used under our previous statute which contained the following definition of a vested remainder (Minn. St. 1941, § 500.12): "* * * when there is a person in being who would have an immediate right to the possession of the lands upon the ceasing of the intermediate or precedent estate." That clause was omitted from our statutes by L. 1943, c. 69.

■ The Congdon case laid down the rule that Minnesota statutes covering trusts in real property do not prohibit accumulations of income from personal property within the period therein specified, and held that in the absence of a statute on that question we are required to look to the rules of the common law applicable to trusts in personal property for guidance, the rules of the common law permitting such accumulations. It was held in the Congdon case that the statutes which apply to trusts in real property have no application to trusts in personal property, the courts being free to apply the rules and principles of the common law to trusts in personal property. Since our statutory provisions as to trusts in real estate are wholly inapplicable to trusts in personal property, resort may be had to the rules of the common law in aid of our statutes for interpreting and administering personal property trusts. Common-law rules which restrict the duration of the trusts are of course the same for real and personal property. While there has been

some criticism made of the rules laid down in the Congdon case, there has been no attempt made to overrule it nor any change in the rules it established. The common law is therefore in force in this state except as it has been abrogated by statute or is not adapted to our conditions. The doctrine of practical construction is applicable to wills the same as to other writings. A beneficiary must therefore comply with the conditions precedent prescribed by the trust instrument to acquire any rights under it. This court in Erickson v. Erickson, 197 Minn. 71, 78, 266 N. W. 161, 164, 267 N. W. 426, held that:

"* * * In the absence of statute and within the limits as to perpetuities, a donor may dispose of his property as he sees fit, and this includes corpus or principal as well as income."

Upon application for reargument this court rejected the plea that the case should be controlled by Mason St. 1927, § 8092, which provided:

"When a trust is created to receive the rents and profits of lands, and no valid direction for accumulation is given, the surplus of such rents and profits, beyond the sum necessary for the education and support of the person for whose benefit the trust is created, shall be subject in equity to the claims of his creditors, in the same manner as other personal property which cannot be reached by an execution at law."

This court observed that this contention was rejected by the trial court and that the respondent placed her chief reliance upon Wetmore v. Wetmore, 149 N. Y. 520, 44 N. E. 169, 33 L. R. A. 708, 52 A. S. R. 752, in which the New York court held that under their statutes the section which corresponded to § 8092 applied with equal force to trusts of personal property. This court refused to follow the New York decision and in doing so pointed out the distinction between the New York statutes and our own by saying that aside from the difference between the trust instrument in the Wetmore case and the one in that case, there was in the State of New York a statutory provision, absent from our own laws, which their courts had construed as making provisions for trusts in real estate equally applicable to trusts in personal property. The respondent also relied upon Canfield v. Security First Nat. Bank, 8 Cal. App. (2d) 277, 48 P. (2d) 133, but this court observed that the California case followed the New York construction

of their statute, which contained provisions not included in ours. The interpretation of the court below was followed and applied to the effect that the trust in that case was largely one of personal property, and there being no showing in the record of any rents or profits received from real estate included in the trust, this court affirmed, rejecting respondent's contentions.[3]

■ Trusts in personal property as well as in real property have been abolished in this state except as authorized by M. S. A. c. 500 entitled "Estates in Real Property," which leaves trusts of personal property free to be created for any purpose possible under the common law. Section 500.12 of that chapter provides that:

"Future estates are either vested or contingent. They are contingent while the person to whom, or the event upon which, they are limited to take effect remains uncertain."[4]

---

[3]See, Mattson v. United States Ensilage Harvester Co. 171 Minn. 237, 213 N. W. 893; Mowry v. Thompson, 189 Minn. 479, 250 N. W. 52; In re Tower's Estate, 49 Minn. 371, 52 N. W. 27.

[4]See Commentary by Dean Fraser of Minnesota on *Future Interests, Uses and Trusts in Minnesota,* 28 M. S. A. p. 53. See 13 Minn. L. Rev. 69, for the following statement: "If, however, the contingency is incorporated into the description of the remaindermen it is then a condition precedent to ownership and the remainder is contingent." Also, see the following quote from 30 Ky. L. J. 71:

"Some courts, laying an over-emphasis upon the rule that courts prefer a vested remainder to a contingent one, find devises vested wherever they can and in doing so have in too many cases done violence to the language of testators and grantors, and have held remainders vested which in fact were clearly contingent. * * *

"A great deal of uncertainty has been caused in determining whether a remainder is vested or contingent by statutory definitions adopted at an early date in the state of New York and cited with approval by Chancellor Kent under the mistaken belief that they were correct statements of the common law definitions of vested and contingent remainders. We have seen that similar statutes have been adopted in nine other states and many courts in jurisdictions where there are no such statutes have been misled by them. This was true in the states of Alabama and Illinois, in which jurisdictions today, the courts have gone back to the common law definitions; in Alabama by the enactment of a statute and in Illinois by the

■ In In re Trust Under Will of Murray, 207 Minn. 7, 12, 290 N. W. 312, 314, the question arose whether the statutes cited by appellant prevented testatrix from directing when the remainder should vest. This court said it did not think the statutes referred to and relied upon were intended to control a testator in respect to the time that a bequest should take effect or vest. It was held that the important matter in that case was not any statute but the language of the will, the court stating that "It is not unlawful to postpone the vesting of the remainder until the life estate ends." Levings v. First Nat. Bank & Trust Co. 192 Minn. 143, 148, 255 N. W. 828, 831.

The second trust was composed of the residue of the testator's estate. It is not involved here except that if the income from the first trust fund was found insufficient to make the annual payments from income, any amount lacking was to be taken from the Lampert or residuary trust. Also, if the corpus of the first trust should at the time of the termination of the trust be of less value than when originally created, sufficient property or holdings should be transferred from the second or residuary trust to the first trust to bring the res up to the specified original value.

■ The principal issue for determination by the court is whether or not the vesting order gave the custodian the remainder of the trust corpus at the termination of the trust as a "right, title, interest and claim" owned by the remaindermen at the time of the vesting order.

The testator here made no immediate gift subject to divestment; the takers were to be determined upon the termination of the trust, and until such termination, no one could determine who the takers would be. Clearly the terms of the trust indicate that no one was to take a vested interest subject to divestment and there was to be no distribution or gift of the corpus until the termination point of the trust had been reached. If a named beneficiary died before the trust ended, such beneficiary would receive nothing upon the distribution of the corpus, and if any issue of such beneficiary died before the termination of the trust,

court's overruling its decisions which applied the New York test. Dean Fraser of Minnesota has pointed out that the adoption of these statutory definitions is unfortunate and has added confusion and uncertainty into our law today."

such issue would take nothing by the gift. Nothing from the gift would pass to the heirs of such predeceased beneficiary, there would be no property in them that could pass by intestate succession or by will. See, Levings v. First Nat. Bank & Trust Co. *supra*. As was said in Brownell v. Hartford-Connecticut Trust Co. (D. Conn.) 147 F. Supp. 929, 931:

"* * * if the remainder interest was not vested, and vested only on the condition precedent of the termination of hostilities, then the remaindermen would have had no interests under the will while they were enemies, and the Attorney General would succeed to nothing."

The Attorney General argues and contends that contingent interests are subject to the seizure authority and therefore the fact that the interest is distributable after the end of the war is no bar to payment to the Attorney General. The cases which he cites in support of his contention arose in the states of New York, Connecticut, California, and Idaho, but those situations are all distinguishable for the reason that there are in those states statutory provisions, absent from our own laws, which their courts have construed as making provisions for trusts in real estate equally applicable to personal property. The distinctions between those statutes and our own have been noticed by our court in Congdon v. Congdon, *supra,* and Erickson v. Erickson, *supra.*

While the Attorney General has cited and places reliance upon Kammholz v. Allen (S. D. N. Y.) 155 F. Supp. 511, affirmed (2 Cir.) 256 F. (2d) 437, that case has definitely held that whether or not interests of the beneficiaries are subject to the vesting order is a matter of state law. This view also finds support in McGrath v. Ward (D. Mass.) 91 F. Supp. 636; Clark v. Continental Nat. Bank (D. Neb.) 88 F. Supp. 324. Clearly the Kammholz case is distinguishable and has no application to trusts in personal property under our Minnesota decisions. It should be noted that the opinion in Rogers v. Hartford-Connecticut Trust Co. (D. Conn.) 165 F. Supp. 116, makes it clear that the court was deciding that question as a matter of Connecticut law, and also found that the court was dealing with a trust designed to frustrate the purposes of the Trading with the Enemy Act. There was no such design in the case at bar.

The case of Herrmann v. Rogers (9 Cir.) 256 F. (2d) 871, involves

a trust subject to the property laws of the State of Idaho. Again, there are in that state statutory provisions absent from our own law which make provisions relating to future interests in real estate equally applicable to personal property. Idaho Code, §§ 55-101 to 55-114.[5]

The Attorney General cites Todeva v. Oliver Iron Min. Co. 232 Minn. 422, 45 N. W. (2d) 782, in support of his contention that the fact that an interest may be distributable after the end of the war is no bar to payment under the vesting order. In that case workmen's compensation had been awarded to the widow of a deceased employee in a total lump sum payable weekly. We have held in construing the compensation law of this state that the respective rights and obligations as to compensation and other benefits under the workmen's compensation law become fixed at the time of employee's death. Our court in the Todeva case held that the right to weekly payments under the circumstances constituted a vested interest. It is elementary that one who is given an award under our workmen's compensation law has an immediate right to certain sums until the award has been extinguished. All that remains after the award has been made is to pay over as the statute provides. The government in the Todeva case was attempting to seize the right to the weekly payments. That case has no application to the case at bar, as the right to the weekly payments constituted a vested interest, the payments only being deferred. The Todeva case did not remotely involve the construction of a trust similar to the one before the court in the instant case. See, Roos v. City of Mankato, 199 Minn. 284, 271 N. W. 582; Warner v. Zaiser, 184 Minn. 598, 239 N. W. 761.

---

[5]It is to be noted that the Supreme Court of the United States has granted a trustees' petition for certiorari in that case, Herrmann v. Rogers, 358 U. S. 332, 79 S. Ct. 353, 3 L. ed. (2d) 345, 346, saying:

"The petition for writ of certiorari is granted. The judgment of the Court of Appeals is vacated, and the cause is remanded to it, to consider whether, under the law of property of Idaho, it was possible, after the time of the making of the conveyance, for any person other than the named beneficiaries of the trust to acquire a property interest in it (other than through a named beneficiary), and, in the light of its determination as to this, to reconsider its holding that respondent was entitled to all the trust funds remaining in the hands of the trustee."

Both sides have referred to a recent decision of the Supreme Court of California, namely, Security-First Nat. Bank v. Rogers, 51 Cal. (2d) 24, 330 P. (2d) 811. The California court rejected the Attorney General's position, which was characterized by the trial court as follows (324 P. [2d] 916):

"The real basis for the Attorney General's whole argument appears to be that the German nationals had vested interests as donees, that is a present fixed right either of present or future enjoyment * * *, and that as Custodian he is not acting by or on behalf of the enemy beneficiaries, but 'is simply substituted for them in all respects under the trust, occupying as to all the property rights vested in him * * *, precisely the same position they would have had had the vesting orders not issued' * * *."

The trial court's order directing that the trust corpus be paid to the German beneficiaries was affirmed. Despite some differences in legal theory, it must be admitted that the case does raise some question of the present validity, as applied to the case at bar, of the California cases that the Attorney General relies on.

It was said in the Kammholz case that it would be against public policy to sanction a testator's circumvention of the intent of Congress by deferring the payment of a present charge on stock in favor of enemy aliens until such payments once again became legal. There is no indication of any intent to obviate the purposes of the Trading with the Enemy Act by the testator in the instant case. He made his last will May 22, 1929, and the term of the trust ended February 7, 1957. A careful consideration of the cases upon which the Attorney General relies discloses situations which might indicate designs to frustrate the purposes of the Trading with the Enemy Act. Not so in the will under consideration here.

The terms of the trust involved in this case are not obscured in ambiguities. The bequest of annuities constitutes a separate and distinct gift from the substance of the corpus, distribution of which has been made dependent upon the survival of the donees until after the time to divide and pay over has arrived. It has been recognized in the law that the gift of an annuity, in the meantime, may constitute a

gift wholly distinct from the disposition of the principal, and if so will not accelerate vesting. See, Annotation, L. R. A. 1918E, 1105 to 1120. The right to receive the gift of the corpus in the instant case was postponed until after the expiration of the trust period according to its terms and was made to depend on the happening of stipulated conditions which might or might not exist at that time. These requirements created a contingency inconsistent with an immediate vesting of the corpus upon the death of the trustor. Futurity was therefore attached to the principal substance of the gift. No contrary intention is disclosed. He used words implying the existence of specified conditions and of futurity. While this court in the Higgins case, confronted with a situation where the testamentary trust involved real estate, held that a contrary intention could be inferred on the part of the testator from the entire absence of substitutionary gifts, yet this court in that case emphasized the existence of an established rule in this state which we think must govern here that (208 Minn. 313, 293 N. W. 594):

"* * * Where the right to receive the gift is postponed until after and is made to depend on the happening of a named event or condition, the gift is contingent and vests in the future. Futurity is then said to be annexed to the substance of the gift. Survival of the donee until the time of payment is a condition precedent to his right to receive the gift."

In the case at bar no words of gift are to be found in the will except in the way of a direction to the trustee to divide and pay over at a stated future time. The enjoyment of the gift of the corpus was clearly postponed and under our decisions, unless a contrary intent is shown, the corpus would not vest until the time for distribution and payment of the principal arrived. Although this court has said that the rule that the members of a class for whom a legacy is provided are to be ascertained upon the death of the testator because a will is presumed to speak as of that date, nevertheless, the rule that the law favors the early vesting of legacies, like all others, has its limitations and will not be permitted to defeat the scheme of the will as disclosed by the wording of the testator. It therefore becomes the sole province of the court, if the terms of the will are in doubt, to ascertain and give effect to the

intention of the testator. If that intention be found from the will, taken in all its parts, it is conclusive. In re Trust Under Will of Bell, *supra*; Elberg v. Elberg, 132 Minn. 15, 155 N. W. 751.

■ In 37 Cornell L. Q. 118, the author, in considering cases of a similar nature, refers to a series of more recent New York cases which hold that where property is given to a proscribed alien, contingent upon the legality of his taking, and where it is further provided that upon failure of the condition the property shall be paid over to a nonalien or friendly alien, or person who may legally take, the custodian may not properly vest the property. In that respect Matter of Reuss, 196 Misc. 24, 91 N. Y. S. (2d) 479, is particularly significant. There the testatrix left $1,000 to her sister in Germany to be hers absolutely and forever, upon the conditions that at the time of the settlement and distribution of the estate: (1) Adolf Hitler, or his form of Government, be not in power in Germany; (2) there be no war between America and Germany; and (3) there be no prohibitive restrictions against the transmission of funds by reason of war between America and Germany. It was then provided that upon failure of any of the conditions in the will the money was to be paid to the Franciscan Friars, the testatrix stating (196 Misc. 26, 91 N. Y. S. [2d] 480) "it being my intention to avoid confiscation of the bequest provided for my beloved sister and that it be paid her if at all possible." Upon petition by the custodian to vest this property, it was argued that the bequest was against public policy, but the court said (196 Misc. 27, 91 N. Y. S. [2d] 482):

"* * * The contention that such a condition is void as against public policy is untenable. There is no policy of the law which forbids the imposition of a condition to a bequest that if the legatee cannot presently enjoy the gift then another shall take it."

Since this court is required to ascertain and give effect to the intention of the testator in attempting to classify a remainder as vested or contingent, it must necessarily exercise its judgment in evaluating the various factors which the terms of the trust present and assign them to their different degrees of importance. Consequently the court below in evaluating the factors here involved was bound to exercise its discretion in construing the testamentary terms and provisions un-

der state law. In applying the law of this state, the court is given a wide latitude in that regard as well as in determining whether a requirement of survivorship did or did not exist and whether a condition precedent or a condition subsequent resulted from the termination of the trust.

■ This court has said repeatedly that the cardinal rule of testamentary construction is to ascertain and give effect to the intention of the testator unless he has attempted to make a disposition of his property contrary to law or public policy. Where there are doubtful clauses in the will, the court should not, in determining the meaning that the testator intended, be controlled entirely by general rules or by judicial decisions in cases apparently similar, but should, where equitable principles are to be applied, exercise its discretion in reasonably interpreting the testator's intentions in the particular case. This rule has been consistently followed in this state and in construing wills, this court has required that the circumstances existing when it was made should be taken into account. The rule which has been most consistently followed in this state was clearly stated in In re Swenson's Estate, 55 Minn. 300, 56 N. W. 1115.

■ In Savela v. Erickson, 138 Minn. 93, 96, 163 N. W. 1029, 1030, this court said:

"Where an immediate gift is made to a class and the right exists to have the property distributed at once on the death of the testator, the persons constituting the class are determined as of the death of the testator. * * *

*  *  *  *  *

"It is a principle quite well recognized that, where a bequest to a class of persons is contingent, the members of the class entitled to take are not determined as of the death of the testator nor as of any time earlier than the vesting of the estate, for it is not to be supposed that the testator intended that the members of the class should be fixed before it is determined that there is to be a bequest. * * *[6]

*  *  *  *  *

---

[6]See, Patton, Minnesota Probate Law and Practice, § 169; Annotation, 75 A. L. R. 773.

"* * * 'Where there is no gift but by a direction to executors or trustees to pay or divide, and to pay at a future time, the vesting in the beneficiary will not take place until that time arrives.' " (Cases cited.)

In In re Trust Under Will of Bell, 147 Minn. 62, 68, 179 N. W. 650, 652, this court held that where there is no gift in a will, except by way of direction to a trustee to divide and pay in the future, the legacy does not vest until the time for payment arrives, and then went on to say:

"We have not overlooked the numerous cases which hold that, as a general rule, the members of a class for whom a legacy is provided are to be ascertained upon the death of the testator, since a will is presumed to speak as of that day, nor the rule that the law favors the early vesting of legacies. It is not necessary to go beyond our own decisions for authority upon these two propositions. * * * These rules, like all others, have their limitations. They are not to be permitted to defeat the scheme of a will as disclosed by its wording as a whole. 'The sole province of the court in all such cases, where the terms of the will are in doubt, is to ascertain and give effect to the intention of the testator. *When such intention is found from the will, taken in all its parts, it is conclusive.'* " (Italics supplied.) See, Elberg v. Elberg, *supra.*

In In re Estate of Freeman, 151 Minn. 446, 449, 187 N. W. 411, 412, this court said:

"* * * Rules of construction, derived from experience and found helpful, are not overlooked, but they are not technical guides which will be followed to a result contrary to the intent derived from the reading of the will as a whole," citing In re Trust Under Will of Bell, *supra.*

It was said in Meeker v. Draffen, 201 N. Y. 205, 209, 94 N. E. 626, 628, 33 L.R.A. (N.S.) 816, that:

"It is difficult to formulate a general rule upon the subject, for 'no will has a brother,' and the language of every testator must be studied by itself in order to learn his intention."

Other cases which emphasize the foregoing rules are: First and American Nat. Bank v. Higgins, 208 Minn. 295, 293 N. W. 585; In re Trust Under Will of Murray, 207 Minn. 7, 290 N. W. 312; Levings v. First Nat. Bank & Trust Co. 192 Minn. 143, 255 N. W. 828; In re Estate of Sherk, 191 Minn. 143, 253 N. W. 365; In re Estate of Turle, 185 Minn. 490, 241 N. W. 570; In re Estate of Martin, 166 Minn. 269, 207 N. W. 618; In re Estate of Peavy, 144 Minn. 208, 175 N. W. 105; Barney v. May, 135 Minn. 299, 160 N. W. 790; Yates v. Shern, 84 Minn. 161, 86 N. W. 1004; Annotation, 144 A. L. R. 1162, 1163.

The Attorney General has given some consideration to First and American Nat. Bank v. Higgins, *supra,* but says that it is not applicable here because it refers to the "divide-and-pay-over" rule. The Minnesota court in the Higgins case made no attempt to change the rule of construction we have heretofore considered. The court merely found that in that case the instruments creating trusts manifested an intention that the gifts should be vested and that under the circumstances the "divide-and-pay-over" rule did not prevent vesting. The court simply decided that the remainder was not contingent as there was evidence of a contrary intention but took pains to embody in the opinion a clear statement of the rule established in this state in In re Trust Under Will of Bell, *supra,* emphasizing that the intention of testator and donor determines whether the named beneficiaries took vested or contingent interests in the trusts.

In Matter of Chittick, 243 N. Y. 304, 319, 153 N. E. 83, 85, there was a specific direction for accumulation of the income of the trust, and at the death of testator's daughter the principal with the accumulation, if any, was to be paid to her lawful descendants per stirpes at the time each should arrive at the age of 25 years. Because of the accumulation feature, the court in that case said:

"* * * The intent in this case is not only to postpone payment but also to suspend the absolute ownership in the interval."

In Matter of Crane, 164 N. Y. 71, 80, 58 N. E. 47, 50, the court stated its conclusion in reversing the court below as follows:

"* * * That aside from the direction to the executors or trustees

to divide and distribute the estate, there are no words importing a gift, and hence it becomes our duty to give force and effect to the rule that where the only gift is found in a direction to divide or pay at a future time, the gift is future, not immediate; contingent and not vested."

We reach the conclusion that the beneficiaries of the gift of corpus under the will of Schmidt were not determined until the termination of the trust; that the interests of those beneficiaries were contingent upon their survival to the end of the trust; that the corpus should be distributed according to the terms of the trust, and that the Attorney General is entitled to none of the corpus.

Affirmed.